## CORBETT vs. THE STATE.

[INDICTMENT FOR LARCENY FROM STOREHOUSE.]

1. *Larceny of bank-bills.*—Bank-bills may be the subject of larceny from a storehouse, under section 3170 of the Code.
2. *Proof of genuineness and value of foreign bank-bills.*—A conviction cannot be had for the larceny of foreign bank-bills, without proof of their genuine-

22

ness and value ; yet these facts may be established, without the production of the act of incorporation, or proof of the handwriting of the bank's officers, by the testimony of the person from whom they were stolen, to the effect that he received and passed them in the course of trade at their nominal value, and the testimony of others that such bills circulated as money in the community; and this proof being made, the genuineness and value of the bills should be submitted to the decision of the jury.

3. *Charge invading province of jury, or calculated to mislead them.*—A charge to the jury in a criminal case, ignoring a material fact as a constituent of the prisoner's guilt, or asserting that certain facts, hypothetically stated, would make out a *prima-facie* case against him, is erroneous.

4. *Effect of prisoner's declarations as evidence.*—When the prisoner's declarations have been adduced in evidence by the State, it is his right to have the entire conversation laid before the jury, and duly considered by them ; yet it does not follow, " that the declaration so adduced in evidence must be taken as . true, if there was no other evidence in the case incompatible with it."

From the Circuit Court of Perry.

Tried before the Hon. C. W. RAPIER.

THE prisoner was indicted for the larceny of a " one-dollar bill of the Bank of East Tennessee, of the value of one dollar, and a ten-dollar bill of the Bank of Middle Tennessee, of the value of ten dollars;" alleged to have been the personal property of one William W. Spalding, and to have been stolen from a storehouse. The rulings of the court on the trial are thus stated in the bill of exceptions:

" The State introduced William W. Spalding as a witness, who testified, in substance, that about the 1st April, 1857, he left his pantaloons in the back room of his storehouse in Marion, at night, his pocket-book being in the pocket thereof; and that said pocket-book contained from twenty to thirty dollars in money, and in it were two bills, a one-dollar bill on the Bank of East Tennessee, and a ten-dollar bill on the Bank of Middle Tennessee. The prisoner, by his counsel, objected to the witness speaking of the contents of said bills, and insisted on their production ; and asked the witness if he had them. The witness answered, that he did not have them; that he had kept them for some time, but was told by the solicitor of the circuit that he need not keep them, and could pass them off if he desired; that he had passed them off, and did not

know where they then were; and that he had passed the ten-dollar bill to a citizen of Marion. The defendant insisted upon his objections; the court overruled each one of the objections, and allowed the witness to speak of the contents of said bills without requiring their production; and the defendant excepted.

"The witness then proceeded to state the contents of said bills, as follows: That the bills spoken of by him were on the Bank of East Tennessee and the Bank of Middle Tennessee, and were bank-bills of the denomination above stated. The solicitor having asked him the value of said bills, he replied, that he did not know their value in any other way than that he received and passed them off, in the course of trade, for the amounts expressed on their face; and that, though such bills did not pass very readily in the community, yet they were so received and passed. The defendant objected to this evidence as to the value of said bills, and excepted to the action of the court in overruling his objection.

"The witness further testified, that, at the time he so left his pantaloons in the back room of his store, defendant was in his employment as a journeyman tailor, lived with him, and worked in said back room; that the defendant had charge of the store, and of the goods therein, at night, and authority to dispose of the same, in the day or night, in the absence of witness and his regular salesman; that another journeyman tailor, by the name of Dyer, was also in his employment at the same time; that said defendant, Dyer, and some other persons, were in said room when he left it that night; that when he first missed his money, he believed that said Dyer had stolen it, and took steps to detect him; that for this purpose he apprised defendant of his loss, who, on his request, agreed to aid him in his efforts to detect Dyer as the thief; that defendant, one or two days after the theft, showed him a one-dollar bill which he said Dyer had let him have, but which witness did not recognize as any part of the money lost; that said Dyer disappeared, by night, some three or four weeks after the theft, and witness had not seen or heard of him since; that the defendant was arrested three or

four weeks after the theft, and, on being searched, said bank-notes above described were found in the watch-pocket of his vest, which was sewed up; that witness recognized said bills, on being taken from the defendant, as a part of the money which he had lost; that the defendant also had in the pocket of his pantaloons a five-dollar gold piece, which witness had let him have, and two or three dollars in specie, loose in his pocket, but had no purse or pocket-book at the time; that he told witness, when he was arrested, that he had found said ten-dollar bill on the settee in said back room, and supposed it to belong to a Mr. Horne, who (witness stated) was in said back room about the time of the loss of said money, or within a few days of it, and had bought a suit of clothes; and that he could not identify said one-dollar bill with any degree of certainty, but recollected said ten-dollar bill very well from some marks thereon.

"The witness further testified, on cross examination, that he had employed defendant, in New York, to come out south and work for him as a journeyman tailor, and to make himself generally useful about his store; that he learned, on inquiry in New York, that the defendant was an industrious workman; and that during the six months defendant had here worked for him, preceding his arrest, he had been industrious and attentive to business. Further, that he did not know that either of said Tennessee banks was incorporated, or authorized to issue bank-notes such as the two taken from the defendant's pocket; that he did not know where either of said banks was located, was not acquainted with the president, cashier, or any other officer of either one of them, and did not know the handwriting of either of them; that he did not know whether either one of said bills was genuine or not, or put in circulation by any lawful authority; that he knew nothing about their being genuine, and could not say that either one of them was genuine; that he only knew their value from having received and passed them as money; that it was customary with banks to issue their notes so as to read, 'The president and directors of the bank promise to pay,' &c.; that he could not say whether said

bills were so issued or not; that the only words he could recollect on the one-dollar bill were, 'Bank of East Tennessee' and the figure 1, and on the other, 'Bank of Middle Tennessee' and the figure 10, with the names of a president and cashier on each, which he could not recollect. The defendant again moved the court to exclude all that the witness had said about the contents of said bank-notes; the court overruled the motion, and the defendant excepted.

"Thomas G. Clancey was then called as a witness by the State, and testified to the finding of said bank-bills on the defendant's person as stated by Spalding; also, that he was engaged in business in the town of Marion about the time said money was lost, having a blacksmith-shop; and that he had seen notes of the bank of Middle Tennessee circulating as money in the community. The defendant objected to the admission of this last evidence, as to the witness seeing the notes spoken of by him in circulation; but the objection was overruled, the evidence admitted, and the defendant excepted. Said witness testified, on cross examination, that he had not seen the notes described in the indictment in circulation, and knew nothing about their circulating further than that such notes were in circulation in the community as money, and knew nothing about their being genuine.

"The defendant proved by the witness Spalding, on cross examination, that said Dyer had been in his employment for some considerable time; that he had had a settlement with him on the day after said money was lost, and fell in his debt between one and two dollars, which he paid; and that said Dyer had no other money or means within his knowledge. He also proved, by one Tuomey, that said Dyer, on the night when he was last seen in Marion, had paid him five dollars, for cigars and other articles bought from him; and, by one Womble, that on leaving his boarding-house, when about to leave the town, he paid about five dollars more to his landlord. Said Spalding also testified that, among the bills in his pocket-book which was lost, were two five-dollar bills, and two or three one-dollar bills.

" This was the substance of all the evidence; and thereupon the court charged the jury, amongst other things,—

" 1. That if the defendant feloniously took and carried away the one and ten-dollar bills described in the indictment, from a storehouse as alleged in the indictment; and that this was done in the county of Perry, within three years before the finding of the indictment; and that said notes were any value,—then the defendant would be guilty as charged in the indictment.

" 2. That in determining whether said notes were of any value, the jury might look to the evidence of their being received and passed as money in the course of trade, and to the evidence in reference to such notes circulating in the community as money.

" 3. That if said notes purported on their face to be bank-bills, and were received and passed as money in the course of trade; and if like notes were at that time circulating in the community as money,—this would be *prima-facie* evidence of their genuineness, and that they were issued by a bank having authority to issue them.

" The defendant excepted to each of these charges, and then requested the court to instruct the jury as follows :

" 1. That if the State had introduced in evidence the declarations of the prisoner, then the whole of the declarations must be taken together, and the State could not select one part and leave another; and, if there was no other evidence in the case incompatible with it, the declaration so adduced in evidence must be taken as true.

" 2. If the jury find from the evidence that the articles alleged to be taken were two bills, or pieces of paper, on one of which were the words ' Bank of East Tennessee ' and the figure 1, and on the other, ' Bank of Middle Tennessee ' and the word or figure 10, and some names on the last for president and directors; and there was no evidence before them that said bills were genuine,—then they must find the defendant not guilty.

" 3. That unless the jury believe, beyond a reasonable doubt, that the defendant, and not Dyer, took the money charged to have been stolen, they must find him not guilty.

" 4. If the jury find that there is no proof of the gen-

uineness of the identical bills alleged to have been stolen, and no evidence of their currency except the fact that Spalding received and passed them off as money; and that there is no other evidence of the value of these identical bills than that above stated; and that the only evidence as to the value of these bills was that of Spalding, who testified that he could not say that they were of any value apart from his receiving and passing them as money,—then they must find the defendant not guilty.

" 5. That the jury, before they can find the defendant guilty, must be satisfied beyond a reasonable doubt that the bank-bills alleged to have been stolen were genuine.

" 6. That the jury, before they can find the defendant guilty, must believe that the bills alleged to have been stolen were issued by a corporation having legal authority to issue such bills, and that said bills were genuine.

" 7. That before the jury can find the prisoner guilty, the facts and circumstances must be so strong and conclusive, as to exclude from their minds every hypothesis or supposition *inconsistent* (?) with his innocence.

" 8. That if there is no evidence in the case, tending to show that the bills charged and set forth in the indictment were genuine, they must find the defendant not guilty.

" The court refused each one of these charges, and the defendant excepted to each refusal. The court had already instructed the jury, before the defendant asked these charges, that they should not find the defendant guilty, unless they should believe him to be guilty, beyond a reasonable doubt, from the evidence, and in view of the instructions of the court; and afterwards further instructed them, that before finding the defendant guilty, the facts and circumstances shown by the evidence must be such as to lead their minds to the belief of his guilt, and so pointedly as to exclude every reasonable conclusion to the contrary."

I. W. GARROTT, for the prisoner.—1. The indictment was framed under section 3170 of the Code, which creates a new offense, and attaches to it a severer penalty than is

attached even to grand larceny. The word *larceny*, as used in this statute, is not defined by the statute itself, nor is it explained or controlled by any other provision of the Code; consequently, the word must be taken in its common-law sense, which did not include the stealing of bank-bills.—Culp v. The State, 1 Porter, 33; 2 Russell, 72; Roscoe, 624; Spencer v. The State, 20 Ala. 29; Murray v. The State, 18 Ala. 729.

2. Secondary evidence of the contents of the bills alleged to have been stolen, ought not to have been admitted. The bills were not lost, mislaid, or destroyed by accident, but were put out of the way by the advice of the State's counsel.—1 Phil. Ev. 422; Part II Cowen & Hill's Notes, (old edition,) 1216; 2 Archb. Crim. Law, 390, 394, note.

3. The witness Spalding ought not to have been allowed to testify at all to the contents of the bills, because he could only recollect a small portion of their contents. The same rule, it is insisted, applies in this case, as in all other cases where an admission, confession or statement is offered in evidence.—Roscoe, 55; Chambers v. The State, 26 Ala. 59.

4. The testimony of Clancey, as to the currency of other bills, was improperly admitted.

5. The first charge given excluded from the consideration of the jury the question whether the bills were the property of Spalding, as alleged in the indictment.— Ogletree v. The State, 28 Ala. 693; Martha v. The State, 26 Ala. 72.

6. The second charge makes the value of the bills depend, not on their genuineness, but on the fact that they were received and passed as money.

7. Neither one of the three grounds on which the third charge makes the presumptive evidence of the bills depend, is tenable.

8. The correctness of the first charge asked and refused is sustained by Roscoe's Criminal Evidence, 55.

9. That proof of genuineness was indispensable to a conviction, as asserted in the 2d, 6th, and 8th charges,

see Ogletree v. The State, 28 Ala. 693; 4 Denio, 364; 12 Wendell, 547; 1 Porter, 125; 3 Har. (N. J.) 563.

10. That the evidence of the genuineness of the bills was insufficient, as asserted in the 4th charge asked, see 4 Denio, 364; 12 Wendell, 547.

11. That the charges asked, relative to the doctrine of reasonable doubt, were correct, see 3 Greenl. Ev. § 29, note 2; Mickle v. The State, 27 Ala. 20; Ogletree v. The State, 28 Ala. 693.

M. A. BALDWIN, Attorney-General, *contra.*—1. The rule which requires the production of written instruments, before secondary evidence of their contents can be received, has no application to the case. It was no more necessary to produce the stolen bank-bills, than it would be to produce any other article stolen; the identity and value of either may be proved without its production. Moreover, a sufficient predicate was laid for the introduction of secondary evidence.—Wade v. Work, 13 Texas, 482; 16 U. S. Digest, 273, § 20.

2. To determine the value of the bank-bills, the jury might look to the fact that they were received and passed as money in the course of trade; and the fact that they so circulated would be presumptive evidence of their genuineness, and that they were issued by banks having authority.—Johnson v. People, 4 Denio, 368; State v. Smart, 4 Rich. 364.

3. The stealing of bank-bills is larceny, as denounced by section 3170 of the Code.—Greeson v. The State, 5 How. (Miss.) 38; United States v. Moulton, 5 Mason, 553; Williams v. The State, 19 Ala. 15.

4. The defendant cannot insist on having his charges given in the language in which they are asked, unless they are in writing; and, even then, the court may explain them.—Code, § 2355; Morris v. The State, 25 Ala. 57.

5. The 5th charge asked, without qualification or explanation, was confused, and calculated to mislead the jury.—Cochran v. Moore, 1 Ala. 423; 28 Ala. 83.

STONE, J.—In Culp v. The State, 1 Porter, 33, it was declared, "that at common law, a chose in action is not the subject of larceny." In the same case it was said, that bank-notes were not within the purview of the act of 1807, which provided for the punishment of larceny of *promissory notes.* It was not in terms said that bank-bills are not personal property, but that was the effect of the decision. Thornton, J., who delivered the opinion of the court, offered neither argument nor authority in support of it..

Under the rules of the common law, it will be remembered, that only *personal goods* can be the subject of larceny. Since the introduction and use of bank-bills as a circulating medium, the question of their classification has frequently been mooted. The various decisions on this question can not be reconciled. In form, they are choses in action; while in their uses and effect, they supply the place of money. They are even a good tender as money, unless objected to on that account. Some courts have held, that they may be the subject of common-law larceny; while others have decided differently.—See the authorities collected in Bishop's Cr. Law, §§ 219, 220, and notes. Even this vigorous author, Mr. Bishop, does not assert it as an undisputed proposition, that current bank-bills are not embraced in the term personal chattels.

Long after the decision in Culp's case, the question came before this court, to what extent can current bank-bills be considered as money? Judge Ormond, in an able opinion, after asking the question, "what is entitled to be considered money," used the following language: "In the present highly commercial condition of society, and under the influence of the credit and banking systems, which, by excluding the precious metals from general use, has made the paper which occupies its place the actual medium of exchange, and the representative of the labor and property of the country, it would be strange if the executive officers of the law had not power to receive it in payment of a judgment. The commercial character of the age has silently produced a change in our language. No one is misunderstood, or suspected of telling a falsehood, when he speaks of having money in his possession,

though it consists entirely of bank-notes. It has worked a corresponding change in the common law, accommodating itself to the altered condition of society. In the great case of Miller v. Race, 1 Burr. 457, which was trover for a bank-note which had been stolen, and which came to the possession of the defendant for a valuable consideration, and without notice of the robbery, Lord Mansfield said, that bank-notes 'were as much money as guineas themselves are, or any other current coin that is used in common payments as cash or money.' ' So they are a good tender, unless they are objected to at the time. Under the term *money*, in a will, bank-notes will pass.''—Haynes v. Wheat & Fennell, 9 Ala. 239. It was held that, although the sheriff had authority to receive only *money* in payment of an execution, and the plaintiff could require of such sheriff coin; yet, if the sheriff received from the defendant current bank-bills which were circulating as money, and returned the execution satisfied, he thereby discharged the defendant from the payment of the debt, and fixed a liability for the same on himself and sureties.

In the case of the United States v. Moulton, 5 Mason, 537, the defendant was indicted for taking and carrying away, with intent to steal and purloin, certain bank-bills, the personal goods of another. Judge Story, in an elaborate opinion, held, that bank-bills were personal goods, and the subject of larceny.

In Rex v. Mead, 5 Car. & Payne, 535, (S. C., 19 Eng. Com. Law, 514,) the same doctrine was asserted.

In Greeson v. The State, 5 How. (Miss.) 33, it was held, that bank-bills are the subject of larceny, and are well described by that style.

The above array of highly respectable authorities are strongly persuasive to show that bank-bills are personal chattels, and have an intrinsic value.

But, independent of authority, we think the argument is decidedly in favor of this view. True, they are not, technically, money. They can not be made a legal tender in payment of debts. But they are more than simple choses in action. They furnish a standard of value in the commerce of the world. They pass from hand to hand

without endorsement; are alike available in the hands of each and every holder, and are not subject to defenses of payment, discount, and set-off, as choses in action generally are. After they are redeemed, they may be again put in circulation, and, on each re-issue, are as binding as when first issued.

The above are properties, not of choses in action, but of a circulating medium. They prove that bank-bills, which are the issue of banks not entirely insolvent, which are genuine, and whose circulation is not prohibited by statute, have an intrinsic value, and are strictly personal goods. We hold, that they may be the subject of larceny under section 3170 of the Code.—See, also, Crane v. Freeze, 1 Harr. 305; Dolby v. Mullins, 3 Humph. 437; Steele v. Brown, 2 Virg. Cas. 246; Means v. Vance, 1 Bailey, 39; McGee v. Cherry, 6 Geo. 550; Turner v. Fendall, 1 Cranch, 117; Brooks v. Thompson, 1 Root, 216; Prentiss v. Bliss, 4 Verm. 513.

We think there was no error in permitting the witnesses Spalding and Clancey, to speak as they did of the bank-bills alleged to have been stolen. It is true that, to justify a conviction, it was necessary to prove that the banks had a legal existence, and that these notes were issued by them. Their value depended on this. Yet the production of the act of incorporation, and proof of the hand-writing of the officers, was not the only mode by which these facts could be established. If such were the rule, there could rarely be a conviction for larceny of bank-bills issued in another State. Another reason: Few business men, in this banking age, take note of the particular bank whose bills they hold; suppose the thief should secrete or make way with the stolen bills; the rule contended for would necessarily lead to an acquittal, in almost every case.

The questions, whether the notes were genuine, and of value, were for the jury; and we think there was enough evidence in this case, to justify the court in submitting its effect to that body.—See on this point, Johnson v. The People, 4 Denio, 364; The State v. Smart, 4 Rich. Law R. 356; U. S. v. Holtzclaw, 2 Hayw. 379; Barnum v.

Barnum, 9 Conn. 242; Commonwealth v. Smith, 6 Serg. & Rawle, 568.

The first and third affirmative charges are erroneous. The first ignores the question of property in Spalding, and the third declares that certain hypotheticated facts would make a *prima-facie* case. The evidence should have been left to the jury for their determination, under an appropriate charge. It was not of that character which authorized the court to pronounce on its sufficiency, however the jury might view it.—Ogletree v. The State, 28 Ala. 693.

It was certainly the right of the defendant to have the jury instructed on the measure of proof necessary to his conviction. The rule is correctly laid down in Mickle v. The State, 27 Ala. 20; Ogletree v. The State, *supra*.

We do not subscribe to the doctrine, to the extent it is asserted in the first charge asked by defendant, and refused by the court. That proposition was asserted in the case of the King v. Jones, 2 Car. & Payne, 629; but we think it is well calculated to mislead a jury. We do not deny the doctrine, that when a confession is given in evidence against a defendant, it is his right to have the whole conversation laid before the jury, and considered by them. It does not follow, however, that "if there be either no other evidence in the case, or no other evidence incompatible with it, the declaration so adduced in evidence must be taken as true." The declaration or confession may be incompatible with itself, or may be so unreasonable, as to tax credulity too far.

We hold, that the defendant has all his rights, in this connection, when the entire conversation is laid before the jury, and they are instructed to give it a fair and unprejudiced consideration. Of course, that body will not, and should not without reason, believe that portion which makes against the prisoner, and reject all which favors his innocence.—See Phil. Ev. (edition by Van Cott,) part I, pp. 421, 422.

On another trial, it would be well for the prosecution to trace the bank-bills as far as they are traceable, before offering secondary evidence of their contents. We do not,

however, announce this as a legal necessity, but withhold our opinion upon this question.

Judgment of the circuit court reversed, and cause remanded. Let the prisoner remain . in custody, until discharged by due course of law.

