# Levy v. The State.

### Indictment for Murder.

1. *Arraignment after reversal of judgment of conviction.* — After the reversal of a judgment of conviction, a re-arraignment of the prisoner is not necessary, as the cause stands precisely as if that judgment had never been rendered.

2. *Organization of petit jury.* — When a juror is set aside, at the instance of the prisoner, because his name was illegally written on the list furnished to the prisoner, the refusal of the court to cause a talesman immediately to be summoned to supply his place, if erroneous, is not a reversible error when the record shows that the jury was completed without exhausting the original *venire*.

3. *Weight of declarations or confessions of prisoner.* — The law indulges no presumption as to the truth or falsity of declarations or confessions voluntarily made by the accused after his arrest, and given in evidence against him on his trial, but leaves their credibility and weight to be determined by the jury.

From the City Court of Mobile.

[Levy v. State.]

Tried before the Hon. C. F. MOULTON.

The prisoner in this case was indicted at the February Term, 1872, of said City Court, jointly with one Wash Harris,' for the murder of George James; was arraigned, tried, and convicted at a special term held in March, 1872; but the judgment of conviction was set aside by this court, and the cause remanded at its June Term, 1872. See the case reported in 48 Ala. 170-4. A second trial was had at the February Term of said court, 1873, when the defendant reserved the following bill of exceptions : " This cause coming on for trial, the sheriff proceeded to draw the names of the jurors specially summoned on the *venire*. During the said drawing, the name of Alexander Greenwood was drawn and called, and he answered to his name; but it being shown to the court that the name of said Greenwood was illegibly written on the copy of the *venire* served on the defendant, the court ordered the said name to be discarded. The defendant then moved the court to order the sheriff to summon forthwith another juror to supply the place of said Greenwood ; which motion the court overruled, but stated that if the *venire* was exhausted before a jury was obtained, the order would be made, to which refusal the defendant excepted. The jury was completed without exhausting the *venire*.

" The following was all the evidence in the case : *John A. Cooper*, the first witness for the State, testified as follows : ' I am a justice of the peace for Mobile County, and reside at Mount Vernon. On the morning of the 10th November, 1871, I was called upon to hold an inquest on the body of George James. He was dead, with eighteen buckshot wounds in his side. His body was found about one hundred yards from the corner of Cyrus Sullivan's house, in the County of Mobile.' *Richardson*, the second witness for the State, testified as follows : ' After the accused had been arrested for the murder of George James, I was deputized as an officer to bring him and Wash Harris to the jail in Mobile. While on the way there, the accused called me aside, and said that he wanted to tell me where the gun was that killed George James, and that it was under a log on the right hand side of his house near Mount Vernon. I went there with two other persons and searched around the house, and the gun was found where he said it was.' The gun was produced and identified by the witness. *Berry Cannon*, the third witness for the State, was a gunsmith, and identified the gun as one which he had repaired for the accused. *John Baptiste*, the fourth witness for the State, testified : ' When the defendant was put in jail I went there to see him, and he made a confession to me. He told me that he and Wash Harris started out from his house on the night of the

killing, without the intention of harming any one; that they met George James near Cyrus Sullivan's house; that Wash advanced upon him and struck him with a gun, and shot while he (James) was running away; that after Wash fired, he fired off his gun too, just for fun, and without pointing it at or intending to hurt any one; that when Wash struck and fired, he was sitting on a log, about twenty steps behind him. At the time of the occurrence, Wash Harris and the defendant lived together in said defendant's house. It was a dark and drizzling night on which James was killed. There had been a public meeting of colored people that day. Witness knows the gun now shown him to be the defendant's gun, and has seen him with it before James was killed.' The State here rested. *Tom Pettway*, the first witness for the defence, testified: ' I was with George James the night he was killed; started with him from the house of Cyrus Sullivan, to go to the arsenal. When we got to the corner of Sullivan's fence, Wash Harris met us, and immediately struck George James with a gun. We both then started, and ran from him, when two shots were fired, and James was killed. After the first shot, and before the second, Wash called to George," Come back here, you d— son of a b—." Before Wash struck, I saw another man sitting on a log about thirty yards behind him; don't know who it was.' Several witnesses for the defendant testified to his good character for peace and quietude. This was all the evidence in the case. The defendant asked the court to instruct the jury as follows: ' 1. If you believe, from the evidence, that the confessions made by the prisoner were made while under arrest, and voluntarily, then the presumption of law would be that his confessions are true, as stated by him; and if the circumstances in evidence are insufficient to overthrow the presumption of the truth of the confessions, then you should find for the defendant.' ' 2. If there should be a reasonable, well grounded doubt as to whether this presumption of law was overturned by the circumstances in the case, then the accused would be entitled to the benefit of the doubt, and should be acquitted.' The court refused these charges, and the defendant excepted to their refusal."

—— ——, for the prisoner.

BEN GARDNER, Attorney General, for the State.

BRICKELL, J. — The first matter not embraced in the bill of exceptions, to which our attention is directed by the counsel, is, that after the reversal of a judgment of conviction, the record does not show that the defendant was re-arraigned. In this there is not error. The reversal of the judgment of con-

[Levy v. State.]

viction restored the cause to the condition in which it was before the rendition of that judgment. That judgment was, after the reversal, in the language of some authorities, mere waste paper. There was no more necessity for a re-arraignment, than there would have been if the cause had been continued at the term at which that judgment was rendered. The plea of not guilty, interposed when the defendant was called to the bar to answer the indictment, remained in full force; the issue to be tried, and a trial by jury, the only mode of trial, to which the defendant was subject. The objection that the defendant was not in court when the motion for a new trial and in arrest of judgment were considered is not supported by the record, if available.

2. The first matter of the bill of exceptions is, that the court declined, on the request of the defendant, to suspend the organization of the jury, and cause another juror to be summoned in the place of Greenwood, whose name appeared to have been illegibly written on the list furnished the accused, and who was, of consequence, set aside under the statute. R. C. § 4175. We are unable to discover any prejudice to the defendant in this ruling of the court. We think it affirmatively appears from the record that none resulted to him. A jury which he accepted was empanelled, without exhausting the original *venire*, and by that jury he was tried. His right of challenge was not impaired, nor was any other right accorded to him invaded. Even if the action of the court had been erroneous, a reversal could not follow, if the record disclosed that no injury resulted. *Wilson* v. *State*, 31 Ala. 371.

3. The charges requested by the appellant were properly refused. They are based on the hypothesis that the law in his favor indulges the presumption that confessions voluntarily made by him are true, and devolves on the State the burden of disproving them beyond a reasonable doubt. The law indulges no such presumption. When a confession is offered in evidence against a prisoner in a criminal prosecution, the law, in tenderness to him, requires that it shall be shown to have been voluntarily made. When this is shown, it is admitted in evidence, and as to credibility and sufficiency, rests on the same ground as admissions made by a party to a civil proceeding. No presumption of truth or falsity trammels the jury. The whole of a confession or admission must be given in evidence, and taken together; in other words, it must not be garbled. Apart from the manifest injustice to the party of selecting the parts of a confession or admission deemed prejudicial, and disconnecting them from other statements with which they were connected in expression, it would be impossible to fix the true meaning of the parts selected. Therefore,

[Robbins *v*. State.]

the law requires the whole of an admission or confession to be laid before the jury, as well that which is favorable as that part which is unfavorable.   The jury are not bound to give credence to every part; they may, for sufficient reasons, reject a part and give credence to a part; or they may reject the whole as unworthy of credit.   This is the power of the jury, which they cannot exercise capriciously or arbitrarily, but for sufficient reasons appearing to them, either from the confession or admission itself, from the circumstances under which it was made, from the intent and motive of the party making it, or because of its inconsistency with other evidence in the cause.   1 Greenl. Ev. §§ 18, 20 ; *Corbett* v. *State*, 31 Ala. 329.   Apart from this, the declarations in evidence in this case were not confessions, but rather declarations of innocence, made by the accused after his arrest.   If there was a presumption of the truth of such declarations, they would be manufactured to meet the exigencies of many criminal cases.

We have carefully examined the record, and find in it no error.                          The judgment is affirmed.


