# McAdory v. The State.

### Indictment for Arson.

1. *Evidence; what admissible.*—Any indications of a consciousness of guilt, by a person suspected of or charged with crime, or who may after such indications be suspected or charged, are admissible evidence against him; and the number of such indications can not be limited, or their character or nature be defined.

2. *Same.*—When it is clear that the particular conduct or declarations have no relation to the offense, and ought not to have any weight with the jury, the court should reject them as evidence; but however minute or insignificant they may be, if they tend to elucidate the transaction, they must be admitted.

3. *Same.*—Where a conversation with the prisoner is offered against him, he has the right to have all that was said at the time, on the same subject, laid before the jury; but a conversation can not be excluded, because the witness with whom it has had, detailing all of the conversation he heard, states that if the prisoner made any reply to the last remark of witness, in the conversation, he did not hear it; especially so, where there were other witnesses present, by whom the prisoner could prove his reply, if material.

4. *Same.*—On the prisoner's trial for arson of A's gin-house, the State may show by a witness who went to a group of persons, among whom was the prisoner, to request them to desist from loud talking, which disturbed services at a church, that defendant, when he saw witness, said he supposed witness had been to another county to find out who burned A's gin-house, to which the witness answered "it is a lie;" and, also, that witness made another remark, about what he heard the prisoner had said about burning the gin-house, though the witness stated he did not hear the defendant's reply, if he made any.

5. *Charge; what erroneous.*—Where the conduct, demeanor, or expressions of the prisoner are relied on as indications of conscious guilt, and their weight and importance depends wholly on their combination with other inculpatory facts, the court should carefully instruct the jury as to the caution with which they should be received, and that it is from their connection with other facts that their whole value should be determined; and it is error to single out one such fact, separating it from the combination of facts, which alone gives it force as criminating evidence, and instruct the jury that they may look to it alone, as tending to show the prisoner's guilt.

6. *Evidence; what admissible.*—In proof of motive to commit the crime, it may be shown that a person other than the owner of the gin-house which the prisoner was charged with burning, had property therein, and that the prisoner had malice towards him.

7. *Confessions; rule as to admission of.*—Where a confession has been obtained by improper influences, subsequent confessions, while such influence

[McAdory v. The State.]

continues, are inadmissible; but there is no rule that because one person applies such influences and they are unavailing, subsequent confessions made to other persons will be presumed to have been induced by them.

8. *Error; what compels a reversal.*—However reluctant an appellate court may be to interfere with the discretion of the primary court in regulating the trial of cases, yet if it should appear that it had refused, to the prejudice of a party, *to confine counsel to the law and evidence of the case*—if it has permitted them to refer to and comment upon facts not in evidence, or which were not admissible as evidence—a reversal will follow.

9. *Charge; what error to refuse.*—When the circumstances of the case are such that the prisoner's failure to aid in the saving of a gin-house, with the arson of which he is charged, makes against him, and the State has proved a conversation between the prisoner and the prosecutor, in which the former stated his sickness prevented his going, it is error to refuse a written charge instructing the jury that "when the State called for the conversation between the prisoner and the prosecutor, defendant was entitled to have the whole conversation go to the jury; and what the prisoner said about being sick, is evidence for him, and if the evidence is believed, it may be considered as sufficient excuse for defendant's failure to go to the gin-house while burning, and the jury should not consider that as a circumstance against him."

10. *Same.*—It is error to refuse a written charge, in a criminal case, which asserts that it is the duty of the prosecutor to prove every material fact charged in the indictment, to a moral certainty, and to satisfy the minds of the jury of the defendant's guilt beyond all reasonable doubt, and if they have failed to do this, and the jury can account for defendant's innocence upon any reasonable hypothesis, in view of all the evidence,—then they should find him not guilty.

APPEAL from Coosa Circuit Court.

Tried before Hon. JOHN HENDERSON.

The appellant, Claiborn McAdory, was convicted of the burning of a gin-house of one Patrick J. McAdory, of the value of four hundred dollars. P. J. McAdory, as a witness for the State, testified that his gin-house, situated in Coosa county, Alabama, and worth, with the contents, more than five hundred dollars, had been burned up on the night of the 17th of December, 1876; that he went immediately to the fire on being aroused, and that he found there several persons; that a short time afterwards James McAdory and Wiley Corbin came to the place where the gin-house was on fire; that the defendant did not come; that on the morning of the next day, he was standing at his gate and saw defendant coming down the public road, which ran about fifty or one hundred yards from his house; that the defendant was not coming by his house, but was going down the road, which was nothing unusual, as he frequently passed without stopping; that, seeing defendant, he called to him and told him to come by, which he did. Witness then said to him, "that he thought he was a friend to him," and defendant replied that he was. Witness then said, "why did you not come and help me last night," to which defendant replied "that he started, and got to a certain place, and was sick, and went back." Witness then told defendant that "he believed he

was the party who burned his gin-house," to which defendant replied "that he was not."

The State then introduced one Slaughter, who testified that he was steward of the church; that one night, while at church, he was requested by the preacher to go out and request some parties who were talking and laughing about fifty yards from the church, to stop their disturbance; that when he got to the point he found it was defendant in conversation with other persons, naming them; that defendant said to witness, "I suppose you have been over in Tallapoosa county trying to find out who burned McAdory's gin-house," to which witness remarked "it was a lie." Witness then stated, in the presence of defendant, "that he heard that defendant said, that if it had not been for Jack Matthews' big mouth the gin-house would have been standing;" that witness did not hear defendant's reply.

To this evidence the defendant objected, the court overruled the objection, and he excepted.

One Beasley, a witness for the State, after testifying to the conversation of P. J. McAdory and defendant, substantially as McAdory had testified, was asked by the State if any one besides McAdory had cotton in the gin-house at the time of the burning? To this evidence the defendant objected, the court overruled the objection, and he excepted. The witness then testified that one Jack Matthews had cotton in said gin-house at that time.

One Norwood testified that he had known defendant for a long time, but was not related to him, but that his wife was. This witness was then asked, if he had ever had any conversation with defendant about the burning of McAdory's gin-house, and stated that on one occasion he had a conversation about the matter enquired of, while returning from church. Witness was then asked, if any inducements were held out to the defendant to confess, or if he offered any reward or threatened him with any punishment, and replied that he offered no inducements and made no threats. The witness could not fix the exact time at which this conversation took place.

Defendant here offered to show that inducements had been held out to defendant to confess, and for that purpose introduced P. J. McAdory, who stated "that some time after the burning he had a conversation with defendant, in which he asked him to tell him about the matter, and afterwards he told him that he was a young man, and if he would come out like a man and tell all about it, it would go much lighter with him, or be better for him." Witness could not fix the exact time of this conversation, but it was shortly after the burning occurred.

The State then recalled Norwood, and asked what the defendant said in the conversation referred to. Defendant objected to evidence of any thing then said by him. The court overruled the objection, and he excepted. Witness then stated "that while he and defendant were coming from a funeral, he asked defendant if he knew who burned McAdory's gin-house; that defendant asked him if he would keep it a secret if he would tell him," and upon witness saying that he would, defendant "told him that Jack Matthews cursed him, and told him (defendant) that he could buy him; that he wanted to get even with him, and that he stuck a match to the pick-room."

In the closing argument of counsel for the State, a reference was made to the fact that defendant had witnesses present, (of which there was no evidence,) who were not examined, and it was insisted that the failure to examine these witnesses was a circumstance against him.

This was substantially all the evidence, and the court charged the jury, among other things—1. If the evidence satisfies you that the defendant had a motive to burn the gin-house of Patrick J. McAdory to injure Jack Matthews, believing that Jack Matthews had cotton in the gin-house, you can look to that fact as evidence tending to show his guilt. To this charge the defendant duly excepted.

The court also charged the jury as follows: "If the jury are satisfied from the evidence that a conversation was had between the witness Slaughter and the defendant at the time testified about by the witness Slaughter, in substance, to the effect that the defendant charged Slaughter with going to Tallapoosa county to enquire about the burning of McAdory's gin-house, and the witness denied having done so, and stated that he (the witness) had heard that the defendant had said if it had not been for Jack Matthews' damned mouth, McAdory's gin-house would have been standing—the jury may look to this fact, as evidence tending to show the guilt of defendant. To the giving of this charge the defendant excepted.

The court further charged the jury. "If the evidence satisfies you that the defendant had a motive to burn the gin-house of P. J. McAdory to injure Jack Matthews, believing that Jack Matthews had cotton in the gin-house, you can look to that fact as evidence tending to show his guilt." To this charge the defendant also excepted.

The appellant then requested the following written charges: 1. That the manner in which defendant's counsel have managed his case, in not putting other witnesses on the stand, is not a fact to be considered against the defendant. 2. The

[McAdory v. The State.]

fact that defendant failed to introduce certain evidence, is not a fact to be considered against him, as he has a right to rest his case upon the State's evidence, if he thinks it fails to make out a case against him.   3. When the State called for the conversation between McAdory and defendant, the defendant was entitled to have the whole conversation go to the jury, and what he said about being sick is evidence for him, and if the evidence is believed it may be considered as a sufficient excuse for defendant's failure to go to the gin-house while burning, and that the jury should not consider that as a circumstance against him.   5. It is the duty of the State to prove every material fact charged in the indictment to a moral certainty, and to satisfy the mind of the jury of the defendant's guilt beyond all reasonable doubt, and if they have failed to do this, and the jury can account for the defendant's innocence upon any reasonable hypothesis, in view of all the evidence, then they should find him not guilty." These charges were refused, and defendant excepted.

There was a verdict of guilty, and judgment and sentence accordingly, and the defendant brings the case here by appeal.

STEPHEN J. DARBY, for appellant.—The evidence of Stewart was inadmissible. The rule is that where a party is charged with an offense in his presence and he fails to reply, the presumption of acquiescence arises.—See 1 Greenleaf Ev. § 199. The charge must be one which naturally calls for a reply. It may be impertinent, and best rebuked with silence.—See, also, *Fuller v. State*, 30 Ala. 654 ; *Lawson v. State*, 20 Ala. ; *Campbell v. State*, 55 Ala. ; *Bob v. State*, 36 Ala. 565. The evidence as to Matthews' having cotton in the gin-house, was also improperly admitted. It was *prima facie* irrelevant, and should have been excluded, unless offered in connection with other evidence which would render it admissible.—See 1 Greenl. Ev. §§ 50, 52. The alleged confessions were also improperly admitted. The defendant had shown that the prosecutor had offered inducements to him to confess. The time of the confession and of the inducements offered could not be definitely fixed by the witnesses.—See on this point, *Bob v. State*, 32 Ala. 560 ; 1 Greenl. Ev. § 320, note 1. The charges of the court as to the conversation with Stewart, and the motive that defendant might have to burn the gin-house, are erroneous. They single out small portions of the evidence and give them undue weight.—*Campbell v. State*, 55 Ala. The first and second charges asked by the defendant, should have been given. Counsel for the State, in the closing argument to the jury, had stated that defendant had

witnesses, and his failure to introduce them was a circumstance against him, and the defendant had no other way to combat the argument. The charge numbered three, should have been given. The State had called for the conversation between McAdory and the defendant, and he was entitled to have all that was then said go before the jury.—See *Corbatt v. State*, 31 Ala. 330.

H. C. TOMPKINS, Attorney-General, *contra.*—The conversation with Stewart was clearly admissible. Why should defendant have asked a question about the witness having gone to Tallapoosa county to find out who burnt the gin, unless he had an interest in the matter? It was a circumstance tending to connect him with the commission of the offense, and no matter how slight the tendency, its relevancy was not thereby affected. It also tended to show motive in the defendant to commit the offense. The testimony that Matthews had cotton in the gin-house, was also properly admitted. The motive of the defendant for burning the gin-house was to injure Matthews, and it was certainly relevant to prove that Matthews was injured. It was shown that the witness by whom it was proposed to prove the confessions of defendant, that no inducements or threats had been made, and inducements held out by other parties, not in the presence of the persons to whom the confessions were made, could not render them inadmissible.—*Levison v. State*, 54 Ala. 520. The charge of the court was free from error. The first and second charges asked by the defendant were abstract; there was no evidence to support them.—1 Starkie Ev. 33.

BRICKELL, C. J.—The conversation between the prisoner and the witness Slaughter, had reference to the burning of the gin-house, and it was the prisoner who directed it to that subject. Any indications of a consciousness of guilt by a person suspected of or charged with crime, or who may after such indications be suspected or charged, are admissible evidence against him. The number of such indications it is impossible to limit, nor can their nature or character be defined. Presumptions or inferences may be, and often are, founded on circumstances which, of themselves, independent of the accusation, would not be ground of crimination. It is largely a question of fact, rather than a question of law, for the determination of the jury, whether particular conduct, or particular expressions of the accused, refer to a criminal offense, and spring from his consciousness of guilt. When it is clear that they have no relation to the offense, and that they ought not to have any influence with the jury, it is the duty of the

court to reject them as evidence. But however minute or insignificant they may be, shedding but a dim light upon the transaction, if they have a tendency to elucidate it they must be admitted. They may be connected with other circumstances which will constitute a chain of evidence, leading the mind to a satisfactory conclusion.—*Johnson v. State*, 17 Ala. 624; *Campbell v. State*, 23 Ala. 45; *Liles v. State*, 30 Ala. 24. Standing alone, it may be the conversation between the prisoner and Slaughter would be insignificant, and entitled to no weight in determining the guilt of the accused; but it may become important, and may lead to the conclusion of guilt, if it is shown that he had a motive and opportunity to commit the crime, and that there are other inculpatory facts. The prisoner had, however, as his counsel argues, the right to evidence of all that was said by him in the course of the conversation. The rule applies, that when the declarations of a party are offered in evidence against him, he has the right to lay before the jury all that he said at the time, in relation to the same subject. Otherwise, it would be impossible to ascertain their real import, and injustice might be done, by the suppression or withholding of parts of the conversation, which would qualify or explain those proved. It is the exclusion of fragments of a conversation, or of declarations, the rule requires. Here the witness stated all the conversation he heard and that he did not hear, supposing it had reference to the same subject, he could not repeat. The rule, we think, was satisfied. If a reply was made by the prisoner to the last remark of the witness, there were persons present, having opportunities of hearing it, by whom he could have proved it, if material.—*Covington v. State*, 2 Bailey, 569; *Bob v. State*, 32 Ala. 560.

Verbal admissions in a civil cause, and mere oral confessions in a criminal cause, are received with great caution. There are many infirmative considerations attending them, to which the minds of the jury should be drawn in weighing them. They are easy of fabrication, and the detection and exposure of their falsity is often difficult. Where there is no reason to suspect fabrication, much depends on the circumstances surrounding the party, the capacity of the witness, the degree of attention given by him when they were made, the clearness of his understanding of them, and the accuracy of his memory. When, as observed by Prof. Greenleaf, they are deliberately made and precisely identified, they are often evidence of the most satisfactory nature. When not a direct confession of a prisoner, but his conduct, demeanor, or expressions, are to be used as indications of

conscious guilt—when their importance and weight depends wholly on their combination with other inculpatory facts, the court should carefully instruct the jury as to the caution with which they should be received, and that it is their connection with other facts to which they owe whatever of value should be attached. Terror, or alarm, when charged with or arrested for a crime, or manifested when the crime is mentioned, is a fact which may be proved, as may be flight, or the concealment of evidence. But if either of these facts stood alone, disassociated from any and all other criminating evidence, the court could not, as matter of law, announce to the jury that it was a fact having a tendency to prove the guilt of the accused. Of that tendency it is deprived, and it sinks into insignificance, when there are no other criminating facts. The conversation with Slaughter, if there was a want of other criminating facts, stands upon the same ground—whatever of value may be justly attached to it, is derived from its combination with the other facts. The court was in error, in singling it out, separating it from the other facts, and announcing to the jury that they could look to it alone as tending to show the guilt of the prisoner. The fact would not be shorn of its just strength, if the court had instructed the jury as to all the infirmative considerations attending it, the caution with which it shall be received, and that its value depended on their being satisfied of its truth, and the truth of the other inculpatory facts.

It is permissible in every criminal case to show that there was an influence, an inducement, operating on the accused, which may have led or tempted him to commit the offense. It may spring from the lust of gain, or the gratification of an unlawful passion.—Burrill on Cir. Ev. 285. Now the confession of the prisoner, independent of any inference which may be drawn from the evidence of Slaughter, indicates that he was moved to commit the offense because of his hostility to Matthews. It was then permissible to show that Matthews had cotton in the gin-house. The destruction of the cotton, inflicting loss on Matthews, may have ministered to the gratification of the prisoner's revengeful feelings towards him. There was no error in the admission of the evidence. The instruction to the jury in reference to it, is subject to the objections stated to the preceding charge.

Confessions of guilt can not be received as evidence, unless they appear to have been voluntary. Whether they are voluntary, it is the duty of the court to determine, after a careful consideration of the age, situation and character of the accused, and the circumstances under which they are made. When all these are considered, if it satisfactorily appears

(11)

that they spring from the volition of the accused, and there is an absence of evidence that any person had exerted an influence to induce them, it is not necessary, the witness proving them should be inquired of, whether he or any other person had told the prisoner it would be better for him to confess, or worse if he did not.—1 Green. Ev. § 219; *Levison v. State*, 54 Ala. 520. The confession of itself, taken in connection with the circumstances under which it was made, may bear the best evidence of its freedom from all improper appliances to the mind of the prisoner. The usual preliminary questions were in this instance propounded to the witness, and answered negatively; and when all the circumstances are considered, it is impossible to doubt that the confession was voluntary. Nor was its admissibility affected, because if a confession had been made to McAdory, when he exhorted the prisoner to confess, it would have been inadmissible. The rule is, that when a confession has been obtained by improper influences, subsequent confessions, while such influences continue, are inadmissible. It is not, that when one person applies such influences, and they are unavailing, confessions made subsequently to other persons, will be presumed to have been induced by them.—*Levison v. State, supra.*

"The presumption," says Mr. Starkie, "that a man will do that which tends to his obvious advantage, if he possesses the means, supplies a most important test for judging of the comparative weight of evidence. It is to be weighed according to the proof which it was in the power of one party to have produced, and in the power of the other to have contradicted."—1 Stark. Ev. 846. Hence, when in a civil case, the party against whom a claim is preferred, has evidence which would repel that offered to support the claim if it is unfounded, his failure to produce it creates a presumption against him, and in favor of his adversary. And when a prisoner declines to produce evidence within his reach which would explain or contradict the criminating evidence against him, it is a fact of importance, and may "give a conclusive character to circumstances which would otherwise be of an imperfect and inconclusive nature." We are not prepared to say, that the facts of this case, rendered an argument by the counsel for the State, that a presumption unfavorable to the prisoner could be drawn from his failure to produce evidence in explanation or contradiction of the evidence against him, impertinent or irrelevant. The circuit court seems to have considered such argument legitimate, and we would not be inclined to disturb its rulings on a matter of this kind, unless they were shown clearly to be erroneous.

We remark, however, that counsel should not be permitted to comment upon facts not proved before the jury as true, and not legally competent and admissible as evidence. However reluctant an appellate court may be to interfere with the discretion of a primary court in regulating the trial of causes, if it should appear that it had refused, to the prejudice of a party, to compel counsel to confine their arguments and comments to the jury, to the law and evidence of the case under consideration—if it had permitted them to refer to and comment upon facts not in evidence, or which would not be admissible as evidence, it would be a fatal error.— *Tucker v. Henniker*, 41 N. H. 317; *Berry v. State*, 10 Ga. 511; *Mitchum v. State*, 11 Ib. 628.

The third charge requested by the prisoner, is rather involved. We construe it, however, as asserting the general principle, that when the declarations of a party are offered in evidence, the whole must be taken together, as well that which is favorable as that which may be regarded as injurious. The jury are not bound, and the charge does not instruct them that they are bound to give credence to each and every part of the declaration. They may, for satisfactory reasons, reject a part and credit another. Still, it is right that the whole declaration shall be laid before them, and while they can not arbitrarily or capriciously receive or reject any part, after a deliberate consideration of all the circumstances under which it was made, of the motive of the party, of its consistency with any other evidence in the cause, they must determine how far it is entitled to credit.—*Corbett v. State*, 31 Ala. 329; *Levy v. State*, 49 Ala. 390. The charge asserts further, if the jury believed the declaration of the prisoner, that he was sick, and not able to reach the gin-house while burning, any unfavorable inference which could be drawn against him because of his absence would be removed. If this is the proper construction of the charge, its correctness follows from the decision, when this cause was before us at a former term.

The fifth charge requested, should have been given, under the authority of *Mose v. State*, 36 Ala. 211; *Joe v. State*, 38 Ala. 422.

For the errors noticed, the judgment must be reversed and the cause remanded, the prisoner remaining in custody until discharged by due course of law.