# FLANAGAN *vs.* THE STATE.

[INDICTMENT FOR MURDER.]

1. *Service of copy of indictment and list of jurors ; when omission of record to show, is reversible error.*—The omission of the record to show service of a copy of the indictment and a list of the jurors summoned for his trial, upon the defendant, as required by law, when he is in actual confinement, is a reversible error.
2. *Indictment for murder, trial of ; what evidence admissible on.*—Any fact which tends to show the real motive of the accused in killing the deceased is relevant evidence, whether offered in prosecution or defense.
3. *Charge to jury ; what erroneous.*—Charges which present the erroneous and unreasonable belief of the accused, respecting certain alleged provocation of the deceased, and the accused's transport of rage in consequence, as reasons why he should be acquitted, without any defense or evidence of insanity, are properly refused.
4. *Provocation to reduce voluntary homicide to manslaughter ; what should be nature of.*—The provocation which should have the effect to reduce voluntary homicide to the grade of manslaughter must be so apparent as to justify the assumption of its reality. It must also be sudden and sufficiently great, and calculated to exasperate, both in its character and in respect to the person against whom it is directed.
5. *Malice ; province of jury to ascertain existence and degree of.*—Malice being the test and guage of the character of voluntary homicide, it is the province of the jury to ascertain its existence and degree.

APPEAL from the City Court of Mobile.
Tried before Hon. C. F. MOULTON.

The facts are sufficiently stated in the opinion.

ALEXANDER McKINSTRY, for appellant.

JOHN W. A. SANFORD, Attorney General, *contra*.

B. F. SAFFOLD, J.—The appeal is taken from a conviction of murder in the second degree. No service of a copy of the indictment, and a list of jurors summoned for his trial, is apparent on the record, he being in actual confinement. This omission is a reversible error.—*Robertson v. The State*, 43 Ala. 325.

Other questions of importance are presented, which require decision. A homicide perpetrated by poison, lying in wait, or any other kind of willful, deliberate, malicious and premeditated killing, is murder in the first degree.--Rev. Code, 3653. Every other homicide where the person slain was the primary and direct object of the offense, committed under such circumstances as would have constituted murder at common law, is murder in the second degree.—*Ib.*

The evidence establishes, that Flanagan, the accused, between half-past seven and nine o'clock in the evening, came up to a grocery house or store, where several persons were assembled, wearing a slouched hat and overcoat, so as to conceal his features. He asked if any one had passed. In a few minutes it was said that some one was approaching on horseback. The accused arose from his seat and walked into the middle of the road. As the horseman came up, he peered into his face, evidently to see who he was, and then commenced firing on him with a pistol. Four shots were fired, and the rider, who was John Edwin Banta, was killed. Flanagan was immediately arrested by policemen who were present at the grocery store, and one of them, recognizing him, said : "Is that you, Jim ? I wish I had known you sooner." To which the prisoner replied : "Yes, if you had, I wouldn't have done what I wanted to do." The hat of the deceased was picked up, and at his request, was shown to him. He examined it and said : "It's right; I have got him." The body of the deceased had been borne some distance away by his horse,

This brief story, with some other declarations of the pris-oner, indicative of a determined purpose to kill the de-ceased, was all the evidence submitted to the jury.

The first inquiry, on hearing of such a deed of violence, would naturally be, what was the motive of the perpetrator? There was a motive, and it was offered as evidence in behalf of the accused, but was excluded by the court. This is the chief error assigned on the merits of the case.

The accused was manifestly lying in wait, or watching for an opportunity to make an attack, with the intention of killing the deceased. This the statute designates as a willful, deliberate, malicious and premeditated killing, and declares it to be murder in the first degree, punishable by death or imprisonment in the penitentiary for life. The only escape from this fate was in the inducement to the killing, and when that was made known to the court, it was excluded from the jury, and perhaps correctly, if we abide by the weight of judicial precedents. He had not struck in defense of himself, or of those relatives whom the law recognizes his right to protect. In fact, the de-ceased had not done anything which the law of Alabama regards as a crime, whether a felony or misdeanor. He had only defiled the young sister of the defendant, under the promise and pretense of marriage, and had written to her that he would not marry any woman whom he had se-duced. This was communicated to the brother only a few hours or less before the killing. He had been summoned from Selma to attend his sister's wedding, and it was this that he witnessed instead of her marriage.

Section 3598 of the Revised Code forbids a man and a woman to live together in adultery and fornication, under pain of a fine, not less than one hundred dollars, and im-prisonment not exceeding six months. This young girl must become her betrayer's leman and share his punish-ment with him, or else he has committed no offense. Her father may sue him for the loss of her services and recover a trifle, but if he has no property, the suit will be vain. Under such protection of law, the wonder is not that

woman's chastity is esteemed of more value than her se-
ducer's life.

The court charged the jury that they must either find the
defendant guilty of murder in the first degree or acquit
him entirely. This they would not do, but after nearly or
quite twenty-four hours deliberation, on their request, they
were further instructed that they might find him guilty of
murder in the second degree. The court refused to instruct
them, on the request of the defendant's counsel, in refer-
ence to the lower grades of homicide.

Manslaughter is not defined by our statutes, but is taken
with its common law definition. This is the unlawful kill-
ing of another without malice, either expressed or implied;
which may be either voluntarily, upon a sudden heat, or
involuntarily, but in the commission of some unlawful act.
Black. Com. p. 191. Our statute divides this into two de-
grees, the first punishable by imprisonment for not less
than one year nor more than ten years, the second, by im-
prisonment for not more than one year, to which may be
added a fine not exceeding five hundred dollars.—Revised
Code, § 3660.

As the malice, or evil design, with which the killing is
perpetrated is the distinguishing criterion, and as this must
be determined by the circumstances of each case, it has
been left to judicial decisions to draw the line of separa-
tion. In some instances where precedents have been more
closely followed by the courts than suited the public senti-
ment, the legislature has intervened to declare the law in
specified cases. For example, in cases of prosecution for
assault and battery, or affray, opprobrious words, or abu-
sive language, used by the person assaulted or beaten, at
or near the time of the assault or affray, may be given in
evidence in extenuation or even justification, as the jury
may determine.—Rev. Code, § 4198. But the words or
language which may justify a serious breach of the peace
do not subject the party using them to a prosecution, un-
less they are also slanderous.

The killing of another on the moment for offenses to
the person of the slayer, has been regarded by all judi-

cial authority as extenuating the homicide to the grade of manslaughter, out of regard to human frailty. Pulling one's nose is an offense adjudged to have that effect. There are, however, some outrages more exasperating than this, towards which the law is not so lenient, and for which it provides no adequate redress. The resenting these, as Blackstone says of duelling, no penalties of the law will ever be effectual to suppress till a method be found of compelling the original transgressor to make some other satisfaction to the affronted party which the world shall esteem adequate, and reputable-to be resorted to.

In *Noles v. The State*, 26 Ala. 31, it was held that any fact which tends to prove the real motive of the accused in killing the deceased, is relevant evidence. When the perpetrator is unknown and must be discovered by circumstantial evidence alone, such facts would be seized on with avidity in aid of the prosecution. Why not in defense to it? The motive or inducement to an act must be either an extenuation or aggravation of it. The evidence offered in behalf of the defendant to show the reason of his conduct, ought to have been admitted.

All of the charges asked by the defendant were properly refused as involving the same error. Without any defense of insanity, or evidence tending to prove it, they present the erroneous and unreasonable belief of the accused, and his transport of rage on account of his own error, in that respect, as sufficient reasons for his acquittal. The law does not accord impunity to unbridled passions, nor suffer an individual to dispose of the life of his fellow being on his own judgment and belief. It cannot consent that the voluntary killing of another by a person of sound memory and discretion shall be excusable, except in cases of real defense of life, or against great bodily harm. When the danger apprehended is not real, its appearance must be reasonable and imminent. So in reference to the provocation which should have the effect of reducing the killing to the grade of manslaughter. It should be real, or so apparent as to justify the assumption of its reality. It also should be sudden and sufficiently great. It should be

calculated to exasperate both in its character, and in respect to the person against whom it is directed.

Malice being the test and guage of the character of the voluntary homicide, it will always be within the province of the jury to ascertain its existence and degree. In arriving at a conclusion they should be governed by an enlightened sense of justice, and their practical experience of the springs of human action.

The judgment is reversed and the cause remanded.