# Jackson *v.* The State.

## *Indictment for Murder.*

1. *Special venire in capital case; who are "regular jurors" for the week.*—In summoning a special *venire* for the trial of a capital case, which must include the "regular jury," or "those summoned on the regular juries for the week" (Code, §§ 4872, 4874), these terms mean only those persons who were summoned as regular jurors and are in attendance; and neither those who failed to attend, nor those who were excused, nor talesmen, can be included, unless again specially summoned.

2. *Competency of juror, as affected by fixed opinion.*—A person summoned as a juror, who states, on his *voir dire*, that he has a fixed opinion as to the guilt of the defendant, which would bias his verdict, if the facts proved were as he had heard them, but, if the facts proved differed from what he had heard, he believed he would not be biased, but would act on the facts as proved, is not competent as a juror.—Code, § 4881. (The court is "unwilling to extend the rule in *Bales v. The State,* 63 Ala. 30.)

3. *Proof of character.*—A witness for the defense having testified to the general character of the deceased as a turbulent, violent, and dangerous man, he may be asked, on cross-examination, "if he had not heard some say that he was a kind and obliging man and a good neighbor;" but not, "if he had not heard men in his neighborhood say he was a kind neighbor;" nor, "if he had not heard some good reports about him;" the second question being too narrow and restricted, and the third too general.

4. *As to presumption arising from failure to adduce evidence, or to call witness.*—No presumption arises, unfavorable to the prosecution in a criminal case, from the failure to examine all the witnesses to the transaction, or every person to whom a dying declaration was made.

5. *Abusive words, or passion thereby excited, in excuse or mitigation of homicide.*—Mere words, however offensive, are not provocation sufficient to free a homicide from the charge of murder; nor can passion, excited by the use of such words, have any greater effect, though it is relevant to the question of malice, and may, in a proper case, reduce the killing to manslaughter; and under an indictment for murder, a conviction being authorized for any less offense necessarily included in that charged (Code, § 4904), charges asked, claiming an acquittal on account of such passion, are properly refused.

6. *Self-defense.*—The essential elements of self-defense, as established by repeated decisions of this court, are: 1st, that the defendant must be free from fault—must not say or do anything for the purpose of provoking a difficulty, nor be unmindful of the consequences, in this respect, of any wrongful word or act; 2d, there must be a present impending peril to life, or danger of great bodily harm, either real, or so apparent as to create the *bona fide* belief of an existing necessity; and, 3d, there must be no convenient or reasonable mode of escape, by retreat, or by declining the combat.

[Jackson v. The State.]

FROM the Circuit Court of Pike.

Tried before the Hon. JOHN P. HUBBARD.

The defendant in this case, Stephen Jackson, was indicted for the murder of Joseph Bragg, by shooting him with a gun; was tried on issue joined on the plea of not guilty, convicted of murder in the second degree, and sentenced to the penitentiary for the term of ten years. When the case was called for trial, as the bill of exceptions states, "the defendant objected to being put on his trial, because he had not been served with a list of jurors, according to the order of the court in this case;" and he duly excepted to the overruling of this objection. During the impanelling of the jury, the defendant objected to the competency of one Jasper Johnson as a witness, on the facts stated by him on his examination *voir dire;* and he duly excepted to the overruling of his objection. The facts shown in connection with each of these rulings, so far as material, are stated in the opinion of the court. The defendant also reserved several exceptions to the rulings of the court on questions of evidence, which will be readily understood from the opinion of the court. The bill of exceptions purports to set out all the evidence adduced, but a statement of it is not necessary to an understanding of the points decided by this court. It was shown that, at the time of the fatal rencounter between the parties, the defendant, driving a yoke of oxen, came up the lane to the place where John Holmes and Dave Allen were plowing, and, being asked some questions by them, he stopped, put his gun down in a corner of the fence, got up on the fence, and was engaged in conversation with them, when the deceased came up the lane, walking towards his house; that he was accosted by the defendant as he passed, and some words passed between them about a hog, which the defendant had killed, and which was claimed by the deceased as his own; that the deceased drew his knife from his pocket, advanced towards the defendant, and attempted to pick up a fence-rail, when the defendant, who had got down from the fence, picked up his gun, and shot him twice; and, as the attending physician testified, the deceased died the next day from the effects of the second shot. The State introduced said John Holmes as a witness, but Dave Allen was not called. The State introduced Mrs. Mary Jane Holmes as a witness, who testified to dying declarations by the deceased as to the circumstances and details of the fatal rencounter; but two other persons who, according to her testimony, were present when these declarations were made, were not examined as witnesses.

The defendant requested the following charges to the jury, each of which was refused by the court, and exceptions duly reserved to their refusal:

[Jackson v. The State.]

1. "If, at the time the fatal shot was fired, the defendant was in that condition in which the sway of reason was disturbed, and he was regardless of her admonitions by reason thereof, then he can not be convicted as charged in the indictment."

2. "Although the jury may believe that the defendant, when the deceased told him that he claimed the hog the defendant had killed, or that it was his, replied that he was a 'liar,' or a 'damned liar,' and said epithet was used under the influence of sudden resentment, and not for the purpose of bringing on a difficulty with deceased, in order that defendant might have a pretext to kill him, in furtherance of a design previously formed to do so; then, notwithstanding the use of such insulting words by the defendant, the deceased was not justifiable, in consequence thereof, in assaulting the defendant with a knife or a rail, if in fact he did so; and if he did so, defendant had a right to defend himself against said assault, to the extent necessary to save his own life, or his body from grievous bodily harm, provided there was no reasonable mode of escape known to him."

3. "If there were but two witnesses to the difficulty which resulted in the death of the deceased, and the prosecution has only called one of them, the presumption is, that the testimony of the other witness would not be favorable to the prosecution; and the jury would be authorized to predicate a reasonable doubt on the failure to introduce the other witness."

4. "Although the deceased had not made an assault on the defendant, yet, if the defendant acted under the reasonable belief that he was about to do so, and that he was in imminent danger of his life, or was about to suffer grievous bodily harm from the deceased, and was reasonably free from fault in bringing on the difficulty, and there was no reasonable way of escape, then the defendant is not guilty."

5. "If the jury find, from the evidence, that the defendant was, when the fatal shot was fired, in such a condition of mind that the sway of reason was disturbed, and he was unable to heed its admonitions; then the defendant can not be convicted as charged in the indictment, unless he brought on the difficulty with a view of having a pretense to kill the deceased."

6. "If the jury are reasonably satisfied that the deceased made other statements to his family, or to other persons, after the one made to Mrs. Holmes, and that such statements were known to the prosecution in this cause, and related to the circumstances of the killing; the suppression of such statements is a circumstance to be considered against the prosecution, and raises the presumption that the other statements would not correspond with the one adduced in evidence."

[Jackson v. The State.]

7. "If the jury find that no sufficient reason or excuse has been shown why Allen was not called, and put on the stand as a witness for the prosecution, the presumption is, that his testimony would not be favorable to the prosecution, and the jury may reasonably predicate a reasonable doubt on such failure."

8. "The fact that Allen was not put on the stand by the prosecution, raises a strong presumption against the prosecution, provided no sufficient cause or excuse therefor is shown."

9. "If the fatal shot was fired in a passion, or in heat of blood, then it was not fired in malice."

GARDNER & WILEY, for the appellant, cited *Bales v. The State*, 63 Ala. 35; *Mitchell v. The State*, 60 Ala. 32; *The State v. Hill*, 34 Amer. Dec. 396; *The People v. Wellar*, 30 Mich. 16.

T. N. MCCLELLAN, Attorney-General, for the State.— (1.) The defendant's objection to going to trial was, not to the special *venire*, but to the sufficiency of the copy served on the defendant.—*Brister v. The State*, 26 Ala. 107. If the objection had been to the *venire* itself, it was properly overruled, on the facts proved. (2.) That Johnson was a competent juror, see *Bales v. The State*, 63 Ala. 30. (3.) The evidence as to character was material, and the questions asked did not come within the rule. (4.) As to the charges asked and refused, the rulings of the court are sustained by *Mitchell v. The State*, 60 Ala. 28; *Flanagan v. The State*, 48 Ala. 703; *Boswell v. The State*, 63 Ala. 308; *Lewis v. The State*, 51 Ala. 3; *McGar v. Adams*, 65 Ala. 106; *White v. The State*, 72 Ala. 199.

CLOPTON, J.—The court made an order, setting a day for the trial of the cause, and commanding the sheriff "to summon one hundred persons, qualified citizens of this county, including those summoned on the regular juries for the week," and to serve a list of the jurors on the defendant, one entire day before the day set for the trial. When the case was called, the defendant objected to being put on trial, on the ground, that a list of the jurors had not been served on him according to the order of the court; and, in support of his objection, made known to the court that, in organizing the regular petit juries for the week, several, regularly summoned, did not appear, and others were excused. To supply the deficiencies, talesmen were summoned, and sworn in for the week. One of the talesmen left the court, without leave, on account of sudden sickness in his family, and another person was sworn in for the week in his stead. All these talesmen, except the one who had left the court, were included in the list of jurors deliv-

[Jackson v. The State.]

ered to the defendant, as being on the regular jury, but were not otherwise summoned for the trial of the cause.

The statutes provide that "The court must make an order, commanding the sheriff to summon not less than fifty, nor more than one hundred persons, including those summoned on the regular juries for the week, or term, when the term does not exceed one week;" and that a list of the jurors summoned, including the regular jury, be delivered to the defendant, if in actual confinement, one entire day before the day set for the trial.—Code, §§ 2874, 2872. What persons constitute the regular jury, in the meaning of the statutes? At least twenty days before the day fixed by law for holding each regular term of the Circuit Court, the judge of probate, sheriff and clerk of the court, or a majority of them, must draw from the box containing the names of persons previously selected, as qualified to act as jurors, the names of the requisite number to serve as petit jurors, allowing thirty persons for each week of the term of the court. The statutes relating to the drawing and summoning of juries are declared to be merely directory. If, in consequence of the neglect of the officers, or from any other cause, no petit jury is returned to serve at any term of the court, or summoned for any week thereof, the court may, by an order entered on the minutes, direct the sheriff forthwith to summon the requisite number of persons to serve as petit jurors; and a jury thus organized is in all respects legal. When, by reason of challenges, or any other cause, it is rendered necessary to supply deficiencies on a regular jury, or to form one or more entire juries, if the occasion requires, the court may cause petit jurors to be summoned, either from the bystanders, or from the county at large. Jurors thus summoned are called talesmen, and must not be compelled to serve longer than the day for which they are respectively summoned, unless detained in the trial of an issue, or the execution of a writ of inquiry, submitted to the jury of which they are members, or unless re-summoned.—Code, §§ 4738, 4759, 4761, 4764.

Under the statutory provisions, persons who are summoned to supply deficiencies on the regular jury, cannot be compelled, except in the contingencies prescribed by the statute, to serve longer than one day, though they may be re-summoned from day to day, and such talesmen constitute no part of the regular jury. It is only in the event that no petit jury is returned or summoned for the term or the week, that a regular jury may be composed of persons summoned forthwith. When, therefore, the statutes use the phrases, "*including those summoned on the regular juries for the week*," and "*including the regular jury*," in respect to the trial of capital offenses, reference is had to those persons who have regularly been drawn and sum-

[Jackson v. The State.]

moned, or who have been summoned forthwith when no petit
jury is returned or summoned, and who are in attendance.
Persons summoned as jurors for the week, who do not attend,
or are excused, and talesmen, should be omitted from the list
of jurors delivered to the defendant, unless such talesmen are.
specially summoned by the sheriff for the trial of the cause.
This construction further appears from section 4878, which
requires that, on the trial of a person charged with a capital
offense, the names of the jurors summoned for his trial, and the
names of the regular jurors in attendance, must be written on
slips of paper, and put in a box, or substitute therefor, and
drawn therefrom one by one. No names can be lawfully placed
in the box, except of those persons summoned, and of the regu-
lar jurors *in attendance*. This was held to be the correct practice
in *Posey v. The State*, 73 Ala. 490, where, speaking of the
practice, it is said : " This leaves off such as were summoned
and do not attend, such as have been excused, and all talesmen
summoned to supply their places. * * * And if, by the
ruling of the court, a juror is put on the defendant the law
does not authorize, this is a reversible error."

2. The primary purpose of the common law, and of the
statute which prescribes certain questions to be propounded to
persons called as jurors on the trial of capital offenses, is to
secure the guaranty of the constitution—"a speedy public trial
by an impartial jury." Indispensable to the qualification of a
juror is "freedom from bias, prejudice, passion, or interest."
A just and proper administration of the law, having a due
regard to the public safety and interests, as well as to individual
rights, can not be obtained, other than by jurors competent to
discharge the duties with honesty, impartiality, and intelli-
gence. The statutory question is, Has the juror a fixed opin-
ion as to the guilt or innocence of the defendant, that would
bias his verdict? The juror, Johnson, in response to this ques-
tion, stated, he had a fixed opinion as to the guilt of the
defendant, which would bias his verdict, if the facts proved
were as he heard them ; but, if the facts proved differed from
what he had heard, he believed he would not be biased, but
would act on the facts as proved. The disqualification extends
to those who, because of a previously formed opinion, are in a
mental condition that incapacitates them to deliver such verdict
as the evidence and the law may require. The opinion, to
disqualify, must not only be fixed, but possessed of the fixed-
ness which would bias the verdict, whatever might be the
evidence and the law applicable to the case. An opinion
formed on rumor, subject to change on hearing the evidence as
given by the witnesses, and the law as pronounced by the court,
leaving the juror free to weigh and consider impartially the

whole evidence and the application of the law, is not such fixed opinion as disqualifies. While a juror should be above suspicion of bias or partiality, and while it is far preferable that no juror should have any previous opinion, such is impracticable, when crime necessarily becomes, more or less, the subject of discussion and common conversation. When, however, such previous opinion is so fixed that it will bias the verdict on the rumored facts being proved, the juror is not free to impartially consider and weigh the evidence *pro* and *con*, or to make an unbiased application of the law, as pronounced by the court, to the facts, if proved as heard. A juror, having such fixed opinion, is not the impartial juror guaranteed by the constitution. We are unwilling to extend the rule in *Bales v. The State*, 63 Ala. 30.

3. When general reputation becomes the subject of legitimate inquiry, the investigation should be directed in respect to the issues involved, and subserviently to their elucidation. On a charge of murder, the character of the deceased for violence, or blood-thirstiness, is admissible in evidence, when it tends to qualify, explain, or illustrate his conduct and the transaction. When a witness testifies to his general character, it is permissible, on cross-examination, to ascertain the opportunities, sources and extent of his knowledge, and the facts on which he bases his conclusion, that the jury may intelligently consider the sufficiency of his evidence. The inquiry in the present case was directed to the character of the deceased for peace. A witness for defendant having testified that his general character for peace was bad, and that he was regarded as a violent, turbulent, and dangerous man, the prosecution was permitted to ask the witness, on cross-examination, "if he had not heard some say that he was a kind and obliging man, and a good neighbor." While men of violent temper—dangerous, when excited by passion or revenge—may be, and often are kind and obliging, and good neighbors, these characteristics generally indicate a friendly and peaceable disposition. The evidence was properly admitted, that the jury might consider it, in connection with the other evidence, in determining the reasonableness of the conclusion of the witness as to the general reputation, or whether his violence and turbulence were of such degree that an act done by him would naturally create a quicker and stronger apprehension of imminent peril, than if performed by a man of different disposition, and authorize more prompt measures of defense. But the question asked the witness, Allen, "if he had not heard men in deceased's neighborhood say he was a kind neighbor," is too narrow in its scope, and too restrictive in its inquiry; and the interrogatory propounded to Robinson—"if he had not heard some good

[Jackson v. The State.]

reports about deceased"—is irrelevant by reason of generality, unless followed by proof that the reports were in respect to his character for peace. The inquiries should be confined to those qualities which imply a peaceable disposition.

4. The general rule is, when evidence of an inferior degree is offered, the presumption arises, that the higher evidence is withheld for some improper purpose, unless its absence is satisfactorily accounted for. The rule ceases to operate, when no presumption of fraud, or of sinister purpose, can arise. It " does not demand the greatest amount of evidence which can possibly be given of any fact; but its design is to prevent the introduction of any which, from the nature of the case, supposes that better evidence is in the possession of the party." The rule has no application when all the evidence is primary; it applies to a substitution of secondary evidence for primary— of evidence of an inferior grade, for the best which the nature of the case admits of. All the law requires is sufficient proof; and a party is not bound to introduce all the witnesses to the facts. No presumption, unfavorable to the prosecution, arises from an omission to examine all the witnesses to the transaction, or each person to whom dying declarations were made. 1 Green. on Evidence, § 82; *Patton v. Rambo*, 20 Ala. 485.

5. By the statute, which extends the common-law rule, a defendant may be convicted of any offense which is necessarily included in that with which he is charged, whether it be a felony or a misdemeanor.—Code, § 4904. Murder embraces all the elements of manslaughter, and others. An indictment for murder, in legal effect, charges the defendant with every offense legally included in the offense of murder.—*Henry v. State*, 33 Ala. 389. As "words of reproach, how grievous soever, are not a provocation sufficient to free the party killing from the charge of murder," passion, to whatsoever extent aroused by opprobious words, or abusive language, can have no greater effect; though it may be considered, in connection with the other evidence, on the question of malice, and may operate, in a proper case, to reduce the offense to manslaughter. The charges based on the mental condition of the defendant, at the time of the homicide, are equivalent to instructions, that, on the hypothesis of the charges, the defendant was entitled to an acquittal. The charges were calculated to mislead; and, moreover, the record does not set forth any evidence to which they are applicable.

6. The doctrine of self-defense has been so frequently considered by this court, that its essential elements may be regarded as beyond doubt or controversy. These are: 1. The defendant must be free from fault; that is, he must not say or do anything for the purpose of provoking a difficulty, nor must he

[Weaver v. The State.]

be disregardful of the consequence in this respect of any wrong-ful word or act. 2. There must be a present impending peril to life, or of great bodily harm, either real, or so apparent as to create the *bona fide* belief of an existing necessity. And 3. There must be no convenient or reasonable mode of escape by retreat, or declining the combat.—*Story v. State*, 71 Ala 329 : *DeArman v. State, Ib.* 351 : *Tesney v. State*, at present term.

We discover no error in the other rulings of the court.

For errors mentioned, the judgment is reversed, and cause remanded.