# Stitt *v.* The State.

## *Indictment for Manslaughter.*

1. *Acts constituting part of res gestæ of fatal rencontre.*—Where it appeared that the defendant, having been knocked down and beaten by the deceased in a quarrel ran off and got his pistol, returned within "from two to five minutes," and, the quarrel being renewed, shot and killed the deceased; *held*, that if all that occurred between the parties was not parts of one continuous transaction, it was within the principle of *res gestæ,* and admissible as evidence.

2. *Former difficulty, and threats, as evidence.*—The prosecution may prove the fact of a previous difficulty between the parties, and any threats in connection with it made by the defendant against the deceased, though not the particulars of it.

3. *General objection to evidence, partly admissible.*—A general objection to evidence, part of which is admissible, may be overruled entirely.

4. *General exception to refusal of charges.*—When several charges are asked and refused, a recital in these words, "to which refusal the defendant duly excepted," shows only a general exception, and can not avail on error if any one of the charges was properly refused.

5. *Self-defense; burden of proof as to opportunity of retreat.*—To sustain the plea of self-defense, the *onus* is on the defendant to negative a reasonable and safe avenue of escape from the danger which threatened him, and not on the prosecution to prove it.

[Stitt v. The State.]

From the Circuit Court of Talladega.

Tried before the Hon. LEROY F. BOX.

The indictment in this case charged that the defendant, Sam. Stitt, "unlawfully and intentionally, but without malice, killed Richard Oliver, by shooting him with a pistol." The trial resulted in a verdict of guilty of manslaughter in the first degree, with sentence to imprisonment in the penitentiary for the term of six years. The evidence adduced on the trial, as stated in the bill of exceptions, "tended to show that the defendant and deceased were on very friendly terms towards each other, had lived together for more than a year prior to the difficulty, sleeping in the same bed, and eating at the same board;" that they worked at or in the furnace at Ironaton, one in the "cast-shed," and the other in the "coal-shed," the sheds being forty or fifty feet apart; that on the morning of the difficulty, the day and month not being stated, the defendant came to the shed in which the deceased was working, and asked him, "Why did you tell that tale on me?" that the deceased replied, "May be you don't like it, and would like to whip me;" that the defendant answered, "No, we have always got along well together, and I don't want to fight you; besides, you could whip me;" that the deceased again said, "about five minutes afterwards," "I want to know why you told that tale on me;" and the deceased then immediately "cursed him, ran up on him, knocked him down, got on him, and beat him in the face until they were separated," when the defendant at once ran off towards the shed where he worked. "Boze Hollman, a witness for the State, testified that the defendant, as he ran off, said, ' I am going to get my pistol and kill him;' but Bob Hendrick, another witness for the State, who was present at the time, and the defendant himself, positively denied the making of any such statement; and several witnesses for the defense testified that they did not hear defendant make such remark, though they were nearer to him than Hollman was, and would have heard such remark if he had made it. The testimony tended further to show that the defendant ran behind the furnace, and under the shed in which he worked, and returned in from two to five minutes with his pistol in his hand, but stopped at the advice of Andrew McQueen and Bob Hendricks, who told him to go back to his work; that he was then advancing towards the deceased, who had gone back to his work in the lower end of the shed, where the first fight had occurred from two to five minutes previously, and was about forty or fifty feet from him. Defendant objected to all questions asked witness about the first difficulty, and the court overruled his objections; to which defendant duly excepted."

[Stitt v. The State.]

The testimony showed, also, that the deceased came out of his shed, but went back again, at the instance of other workmen who were present, and who sought to prevent any further difficulty ; and that Mr. Collins, the foreman, coming up about that time, asked the defendant what was the matter, and the deceased then came up to them. The witnesses for the defense testified, that the deceased picked up a piece of iron as he advanced, and had it in his hand; but the witnesses for the prosecution testified, some that they saw him pick up nothing, and others that he threw down the piece of iron. Said Collins testified, as a witness for the State, "that the deceased came up to him and the defendant, speaking roughly over his shoulder, and, to the best of his recollection, cursing, and drew back" as if to strike ; that he then laid a hand on the shoulder of each of them, and threatened to discharge them if they had any further difficulty ; "that as he thus stood, with a hand on the shoulder of each, he saw and felt the deceased give away, and at the instant the pistol fired ; that he saw nothing in the hands of the deceased, nor did he see him strike, but he turned away almost at the instant, and when he turned towards them again, the deceased had knocked the defendant down, taken his pistol from him, and was beating him." The defendant himself testified, that the deceased struck him with a piece of iron, and that he was staggering back when he fired the pistol.

It is unnecessary to state the charges asked and refused.

KNOX & BOWIE, for appellant.

WM. L. MARTIN, Attorney-General, for the State.

McCLELLAN, J.—It appears from the bill of exceptions that the "defendant objected to all questions asked witness about the first difficulty, and the court overruled his objections; to which the defendant duly excepted." Whether the "first" difficulty, thus referred to, was not in point of fact only a part of one continuous transaction, is not very clear from the record; but, upon the whole testimony, we are of the opinion, that all that occurred between the parties leading up to and culminating in the killing, was within the *res gestæ* of the act charged, and, therefore, properly allowed to go to the jury.—*Smith v. State*, 88 Ala. 73 ; *Martin v. State*, 89 Ala. 115.

The concession, however, that such was not the case—that the first difficulty was not a part of the *res gestæ* of the homicide—will not avail the appellant. It was clearly competent for the State to prove a former difficulty, and any threats made in connection therewith, though not the particulars of it.

*Lawrence v. State*, 84 Ala. 424 : *Ross v. State*, 62 Ala. 224. What the witness said "about the first difficulty," embraced not only the fact of such difficulty, but threats therein made by the defendant against the deceased. The objection went to the whole evidence, and, if allowed, would have excluded this clearly competent testimony, as well as that which gave the particulars of the former difficulty. Under our uniform rulings, it was properly overruled on this ground, if not on the first consideration adverted to.—*Lawrence v. State, supra;* *Lowe v. State*, 88 Ala. 8; *Badders v. Davis*, 88 Ala. 367; *Coleman v. State*, 87 Ala. 14; *Marks v. State*, 87 Ala. 99.

The only other exception reserved is thus presented by the bill of exceptions : "The defendant asked that the following special charges in writing be given to the jury, and the court refused the same ; to which refusal the defendant duly excepted." This is manifestly the reservation of but one general exception to the refusal of the court to give several charges— five in number—and will not avail the appellant, unless each one of the instructions, so requested, asserts a correct proposition of law.—*Bedwell v. Bedwell*, 77 Ala. 587 ; *E. T., V. & G. R. R. Co. v. Cary*, 81 Ala. 159 ; *Ins. Co. v. Moog*, 81 Ala. 335 ; *Stevenson v. Moody*, 83 Ala. 418; *Black v. Pratt C. & C. Co.*, 85 Ala. 504.

The first of these charges is in the following language : "If the jury are satisfied from the evidence, that defendant acted in self-defense, then the burden of proof is upon the State to show to a moral certainty, and to the exclusion of any reasonable doubt, both the fact that the defendant brought on the difficulty, and to a moral certainty, and beyond all reasonable doubt, that retreat would have been safe; and if the jury have a reasonable doubt upon these two last propositions, or either of them, then defendant was not guilty, and they must acquit." This instruction is self-contradictory and confusing, in that it assumes that self-defense may be made out without proof that no safe retreat was open to defendant; and it is affirmatively bad in casting upon the prosecution the burden of proving that the defendant could have safely retreated. This is not the law. To the substantiation of the plea of self-defense, it is upon the defendant to negative a reasonable and safe avenue of escape from the danger which threatens him. Such proof is an essential element of the right to take life, that life may be preserved.—*Cleveland v. State*, 86 Ala. 1; *Gibson v. State*, 89 Ala. 121.

It is unnecessary to determine whether the remaining charges embraced in this general exception are good or bad, abstractly considered. Whether they were sound or not, the

[Williams v. The State.]

result of this appeal must be the same. We may say, how-
ever, that at least three of the remaining four requests were
faulty.

Affirmed.