(88 South. 905)

NICKERSON v. STATE. (5 Div. 787.)

(Supreme Court of Alabama. May 12, 1921.)

1. Criminal law ⬅1144(19)—If clerk's certificate shows appeal taken within time allowed, court will presume it was taken in proper manner.

When a motion to strike from the docket is made after a case is submitted on its merits, and there is a certificate of the clerk in the record showing an appeal was taken within the time the law allows, the court will presume it was also taken in the manner the law directs, viz. by filing with the clerk within six months after sentence a written statement of appeal. Acts 1919, p. 85, § 7, Code 1907, § 2837.

2. Homicide ⬅158(2), 166(2), 192—Declarations by defendant to deceased prior to killing held admissible.

In a prosecution for murder, declarations by defendant to deceased two weeks prior thereto that he would work 40 years in the penitentiary and give $4,000 to get to kill him, accompanied by vile epithets, were admissible to show motive, hostility, malice, or criminal intent, and who was the aggressor.

3. Criminal law ⬅390, 419, 420(1)—Evidence as to accused's business with one whom he visited at the scene of the crime inadmissible.

In a prosecution for murder, it was not error to refuse to allow defendant and his wife, after he testified that he went to the scene of the homicide to see some one other than deceased, to testify as to his business with such person; same being immaterial and calling for motives, intention, or purpose that were uncommunicated, and the wife's testimony was hearsay.

**4. Homicide ⊂⇒166(1)—Any fact tending to prove real motive for killing relevant.**

Any fact which tends to prove what was the real motive of the prisoner for killing deceased is relevant evidence.

**5. Criminal law ⊂⇒342—Always permissible to show influence operating on accused to lead or tempt him to commit offense.**

It is permissible in every criminal case to show that there was an influence and inducement operating on the accused which may have led or tempted him to commit the offense.

**6. Criminal law ⊂⇒22—Motive or inducement must be either extenuation or aggravation of act.**

The motive or inducement to an act must be either an extenuation or aggravation of it.

**7. Criminal law ⊂⇒429(2)—Homicide ⊂⇒166(5)—Affidavit by deceased against defendant and warrant of arrest issued thereon admissible to show motive.**

In a prosecution for murder, where defendant testified that deceased had sworn out a peace warrant against him, the affidavit made by deceased and the warrant of arrest issued thereon, showing defendant's arrest under it, were material, they showing facts from which the jury could find a motive for the crime.

**8. Homicide ⊂⇒300(3)—Instruction relieving defendant from duty to retreat before firing in self-defense erroneous.**

An instruction that, if defendant fired at deceased under such circumstances as to lead a reasonable man to believe he was in danger of losing his life or suffering grievous bodily harm and was free from fault in bringing on the difficulty, he was under no duty to retreat before striking or firing in his own defense, was properly refused as relieving him from the duty to retreat, which is a necessary element in the doctrine of self-defense.

**9. Homicide ⊂⇒300(15)—No right to fire in self-defense unless free from fault in bringing on difficulty.**

An instruction to find defendant not guilty of murder if, when he fired at deceased, the latter was attempting to strike him, and the circumstances were such as to impress him with the belief that he was in danger of death or grievous bodily harm, and there was no reasonable way of retreat without increasing his danger, was properly refused as ignoring the element of freedom from fault in bringing on the difficulty by word or act, in the doctrine of self-defense.

**10. Criminal law ⊂⇒829(5)—No error in refusing charges on self-defense covered by charges given.**

Under Acts 1915, p. 815, amending Code 1907, § 5364, there was no error in refusing requested charges on self-defense where the court gave charges clearly defining the three elements of self-defense.

Appeal from Circuit Court, Tallapoosa County; S. L. Brewer, Judge.

Briggs Nickerson was convicted of murder in the first degree, and he appeals. Affirmed.

Thos. L. Bulger, of Dadeville, for appellant.

Court erred in admitting evidence of the conversation prior to the fatal difficulty. 91 Ala. 10, 8 South. 669, 24 Am. St. Rep. 853; 84 Ala. 424, 5 South. 33. Counsel discuss in argument other assignments of error, but without further citation of authority.

Harwell G. Davis, Atty. Gen., and Lamar Field, Asst. Atty. Gen., for the State.

The prior conversation involved no elements of the difficulty and was admissible to show the state of defendant's mind towards deceased and as threats. 8 Mich. Ala. Dig. 241, 242; 14 Id. 94, 95. There was no error in the admission of evidence. 16 Ala. App. 503, 79 South. 201; 4 Mich. 161. The charges refused were fully covered. 85 South. 645. Charge 3 is bad in relieving the defendant of the duty to retreat, 82 Ala. 42, 2 South. 481, 60 Am. Rep. 731; and in omitting elements of self-defense, 186 Ala. 1, 64 South. 953. Charge 5 pretermits the element of freedom from fault. 105 Miss. 498, 62 South. 274.

MILLER, J. The defendant, Briggs Nickerson, was indicted, tried, and convicted of murder in the first degree. His punishment was fixed at imprisonment in the penitentiary for life.

[1] The state files a motion to strike this case from the docket, as no appeal is shown by the record to have been taken by appellant within the time and in the manner required by law. Appeals in criminal cases must be taken within six months after sentence or confession of judgment. If taken at the time of judgment, it must be by an entry of record in the case in the minutes of the court that defendant appeals from the judgment with or without suspension of judgment, as he may elect. If taken afterwards, it must be done by filing with the clerk a written statement signed by the defendant or his attorney stating that the defendant appeals from the judgment. This written statement of appeal must be filed with the clerk within six months after sentence or confession of judgment. If the appeal is taken by the written statement, the transcript should contain a copy of it with the date of filing with the clerk. Section 7, Acts 1919, p. 84, approved February 15, 1919.

The defendant was sentenced on the 2d day of October, 1920. The minutes or orders of the court in this case show no entry indicating that defendant appealed from the judgment. There is no written statement in the record signed by the defendant or his attorney filed with the clerk within six months after October 2, 1920, the date of the sentence, as the law requires.

The transcript shows certificate of the clerk, that defendant did take an appeal from

⊂⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

said judgment, and that notice of it was issued and served on the solicitor for the state of that circuit on October 25, 1920. This does not show the manner in which the appeal was taken, but shows it was taken within six months after sentence.

The motion to strike the case from the docket was made after it was submitted. The defendant had no opportunity to ask for certiorari to complete the record to show that the appeal was taken in the manner required by law. It appears from the certificate of the clerk that an appeal was taken within the time required by law. When the motion to strike is made after the case is submitted on its merits and there is a certificate of the clerk in the record showing an appeal was taken within the time the law allows, the court will presume it was also taken in the manner the law directs. The motion is refused. Acts 1919, pp. 85, 86, § 7, approved February 15, 1919; Brigman v. State, 46 Ala. 72; section 2837, Code 1907.

[2] The defendant, Briggs Nickerson, killed Clayton Templeton by shooting him with a pistol on July 13, 1920, in Tallapoosa county, at a sawmill near Jackson's Gap.

The evidence for the state tended to show that defendant went to the sawmill on the day of the fatal difficulty, where the deceased was working, and "told him he wanted to talk to him." Templeton said "he did not have time," and defendant replied, "by G—— he would." Templeton had a hammer. The defendant ran off about 50 feet, stopped, pulled his pistol, and shot deceased, and then went back towards deceased. Defendant shot him twice or three times. Two balls entered the back, and one entered the chest. Deceased died immediately. The state's theory was that defendant was prosecuted by deceased about two weeks before the homicide for public drunkenness and using profane language in the presence of females. The defendant's passions were aroused by the prosecution, and he made threats against deceased.

The evidence for defendant tended to show that he went to the saw mill to see Lon Vaughan, a negro who worked there, on some business. He spoke to Templeton, the deceased, asked him, "How are you this afternoon?" and deceased replied, "'What are you doing now; you have got no business down here; get away from here,' and he reached and got a hammer." Defendant told him "he wanted to speak to this negro a minute." Deceased then threw the hammer at defendant, and defendant dodged the hammer, ran and fell; then deceased came up to defendant and started to strike him with a "cant hook" while he was down, and defendant then shot him two or three times.

The state on rebuttal offered testimony tending to show that deceased did not throw the hammer at defendant, that defendant did not fall down, and that deceased never had or attempted to strike him with the "cant hook."

Two or three weeks before the fatal difficulty the defendant and the deceased met; and the state, over defendant's objection and exception, was allowed to prove the following conversation between them: The defendant said to deceased, "Go on, you s—— of b——, I will see you again." Then deceased turned and looked around and defendant then said, "I will work 40 years in the penitentiary and give $4,000 to get to kill you, * * * you s—— of b——," and deceased turned around and said, "That is right where you ought to be." Several witnesses testified to the above conversation between the defendant and deceased. The defendant objected to the testimony of each witness. The court overruled the objections, and defendant duly excepted and moved to exclude the answers and reserved an exception to the court refusing his motion.

These declarations of defendant to the deceased two weeks prior to the commission of the alleged offense were properly admitted by the court. The expressions contained evidence of ill will or malice of defendant toward the deceased. These statements of defendant were in the nature of threats. They were made in his presence, direct to him. They were admissible to show the hostility, malice, or criminal intent of the defendant toward the deceased. By it the motive of the defendant is illustrated. It is also admissible on the issue as to who was the aggressor in the fatal difficulty. Ex parte State, 181 Ala. 4, 61 South. 53; Stitt v. State, 91 Ala. 10, 8 South. 669, 24 Am. St. Rep. 853; Underwood v. State, 179 Ala. 10, 60 South. 842.

[3] The difficulty took place at the mill. The defendant on direct examination testified, "I did not go there to see Mr. Templeton [deceased]; I went there to see Lon Vaughan." Counsel for defendant then asked witness, the defendant, this question: "For what purpose?" The state objected to the question; the court sustained the objection, and defendant excepted. Witness further testified "that he went home, went down the road, saw Lon Vaughan down there at the mill," and "then turned out of the way. I had business with Lon." Attorney for defendant then asked him this question: "What was it?" The state objected, the court sustained the objection, and defendant excepted. His business with the negro Lon Vaughan would shed no light on the fatal difficulty. He was allowed to testify that he had business with Lon Vaughan. His business with Vaughan called for motives or intention or purpose in going to the mill that were uncommunicated and objectionable. The court committed no error in sustaining objection of state to the questions. Gibbs v. State, 156 Ala. 70, 47 South. 65; Pate v. State, 162 Ala. 32, 50 South. 357.

The court did not err in refusing to allow Mrs. Nickerson to answer this question asked her by the attorney for defendant: "I will ask you if you requested the defendant, Briggs Nickerson, to go by the sawmill and see Lon Vaughan about the horse trade between you and him." The defendant without objection had testified that he went to the mill to see Lon Vaughan on business. He stated he "had some unfinished business with Lon Vaughan that I went to see him about." The horse trade between Mrs. Nickerson, as indicated by the question, was immaterial to the issues in this case. It also called for hearsay evidence and was clearly illegal. Gibbs v. State, 156 Ala. 70, 47 South. 65.

[4] The defendant testified that he did not make the threatening remarks to deceased as testified to by the state's witnesses "that he would work 40 years in the penitentiary and pay $4,000 to get to kill Clayton Templeton"; that he "was there to ask Mr. Harrison to go on his bond, and he did it." Defendant testified:

"He [deceased] had sworn out a peace warrant against me a short while before that. He had sworn out a warrant against me for being drunk and disorderly up there on Sunday."

[5-7] The court, over the objection and exception of the defendant, permitted the state to introduce in evidence an affidavit made by the deceased against the defendant charging defendant with being "drunk and swearing before ladies," in the city of Jackson's Gap, and the warrant of arrest issued by the justice of the peace on said affidavit, and showing the arrest of the defendant under it. The affidavit was made by deceased on June 27, 1920, the warrant was issued by the justice of the peace the same day, and the defendant was arrested on the warrant June 29, 1920. The deceased was killed by defendant July 13, 1920. This affidavit made by the deceased charging defendant with a crime, on which a warrant issued, causing his arrest, about two weeks before the homicide, was competent evidence, material to the issue, from which the jury might see a motive for the killing.

"Any fact which tended to prove what was the real motive of the prisoner for killing the deceased * * * was relevant evidence." Noles v. State, 26 Ala. 31, 62 Am. Dec. 711.

"It is permissible in every criminal case to show that there was an influence, an inducement, operating on the accused, which may have led or tempted him to commit the offense." McAdory v. State, 62 Ala. 154.

"The motive or inducement to an act must be either an extenuation or aggravation of it." Flanagan v. State, 46 Ala. 703.

The arrest of defendant for the offenses charged under the prosecution commenced by deceased were facts from which the jury might determine the real motive for the homicide. This prosecution of defendant by deceased was calculated to create ill will and bad feelings in defendant toward the deceased, which may have produced a motive for the homicide. That prosecution evidenced by the affidavit, warrant, and arrest of defendant, commenced by deceased, were facts on which the jury could look to find a motive for the commission of the offense charged in the indictment. The court did not err in allowing them in evidence. Marler v. State, 67 Ala. 55, 42 Am. Rep. 95; Noles v. State, 26 Ala. 31, 62 Am. Dec. 711; McAdory v. State, 62 Ala. 154; Flanagan v. State, 46 Ala. 703.

[8] The defendant asked the court to give the following written charge No. 3:

"If the defendant fired the fatal [shot] under such circumstances as to lead the mind of a reasonable man with the belief that he was in danger of losing his life or suffering grievous bodily harm at the hands of the deceased, and the defendant was free from fault in bringing on the difficulty, then the defendant was under no duty to retreat before striking or firing in his own defense."

The court refused to give this charge. It relieves the defendant of the duty to retreat. This element is necessary in a charge to state fully the law in the doctrine of self-defense. Jackson v. State, 77 Ala. 18; McKee v. State, 82 Ala. 32, 2 South. 451; Monts v. State, 186 Ala. 1, 64 South. 953.

[9] The defendant asked the court to give the following written charge No. 5:

"I charge you, gentlemen of the jury, that if you believe from the evidence in this case at the time the defendant fired the fatal shot Mr. Templeton, the deceased, was attempting to strike the defendant with a hammer and a cant hook, or with either, and the circumstances were such as to impress the defendant with the belief that he was in danger of suffering death or grievous bodily harm at the hands of the deceased, and that they did so impress him, and there did not appear to be any reasonable way of retreat open to the defendant without increasing his danger, then you should find the defendant not guilty."

The court refused to give this charge. It ignores the element of freedom from fault in bringing on the difficulty, by word or act, in the doctrine of self-defense. Jackson v. State, 77 Ala. 18; Davis v. State, 8 Ala. App. 1, 62 South. 374.

[10] The refused charges, Nos. 3 and 5, relate to the doctrine of self-defense. The court in its oral charge covered fully the three elements in the doctrine of self-defense. At the request of the defendant the court gave written charge No. 1, which also clearly defined to the jury these three principles of law in self-defense. The court did not err in refusing to give charges 3 and 5. Acts 1915, p. 815, amending section 5364, Code 1907.

We find no error in the record.

Affirmed.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.