HARRIS, Presiding Judge.
Appellant was put to trial upon an indictment which, omitting the formal parts, reads as follows:
“The Grand Jury of said County charges that before the finding of this indictment Wendell Tinker and Mary McBryar, whose names to the Grand Jury are otherwise unknown than as stated, unlawfully and with malice aforethought, did assault George Smith, with the intent to murder him, contrary to law and against the peace and dignity of the State of Alabama.”
A trial was had and the jury was unable to reach a verdict. A mistrial was entered of record. The State then elected to sever the defendants and try appellant. He was arraigned in the presence of retained counsel and pleaded not guilty. The jury returned a verdict finding appellant guilty of assault and battery and assessed a fine of $500.00 against him. As additional punishment the Court sentenced appellant to six months in the county jail. Appellant gave notice of appeal and is represented by trial counsel.
The evidence adduced during the trial was in hopeless conflict which only a jury could resolve. The conflicting testimony was resolved against appellant.
George Smith was the victim and the State’s principal witness. He was a former brother-in-law of Sherman McBryar who was previously convicted of murder in the first degree and sentenced to life imprisonment in a totally unrelated case. His conviction was affirmed by this court in 1979. Ala.Cr.App., 368 So.2d 568, writ denied, Ala., 368 So.2d 575. Appellant’s name was mentioned in this case as having taken part in the murder for which Sherman McBryar was convicted.
Smith and McBryar had married twin sisters, Brenda and Linda. When Sherman McBryar and his wife were divorced he married Mary Nunnelly whose former husband, Donald Nunnelly, married Linda. Appellant is also a brother-in-law to Sherman McBryar, having married Sherman’s sister, Jewell. At the time of appellant’s trial Sherman was serving a sentence in the Federal Penitentiary in Atlanta on a kidnapping conviction. These matters are set forth here as background information to show the relationship of the parties in a complex situation stemming from multiple divorces and remarriages. Appellant permitted Mary Nunnelly McBryar, Sherman’s new wife, to live in a trailer located on his property while Sherman was serving the federal sentence in Atlanta.
It would be accurate to say that hard feelings were rampant and that discord played a major role in the actions of this trouble-torn family. There were accusations and counter-accusations, recriminations heaped upon recriminations, all of which culminated in the shooting of George Smith by appellant on Saturday, August 13, 1977.
Smith had improved a house to sell and this house was burned. Smith suspected appellant and Mary McBryar of starting the fire and accused them. Appellant denied any involvement in the arson. Appellant accused Smith of shooting at his house on several occasions while he was working in Tennessee. Smith denied the shootings. On August 4, 1977, Smith ran an ad in a local paper in Trenton, Georgia, where the burned house was located, offering a *599 $500.00 reward for information leading to the conviction of the person or persons burning the house. He did not receive any information and a week later he ran another ad, increasing the amount of the reward to $1,000.00. He did not receive a response to this ad.
The passage of time only served to fan the smouldering flames engendered by hard feelings resulting from the wife swappings. There were fights between Mary McBryar and Linda Faye Nunnelly, the former Mrs. McBryar. Several arguments developed over title to certain furniture and other matters resulting from the inter-marriages.
The defense claimed that Smith and those associated with him harassed appellant and the people living with him by making numerous telephone calls to his residence. He had his telephone number delisted from the telephone book. The defense claimed that after appellant’s telephone number was de-listed Smith started driving by appellant’s residence and shooting into his camper and into his front yard and also into the McBryar automobile. Smith denied these accusations. Mrs. McBryar and Mrs. Tinker contacted the Sheriff’s Office and reported these incidents and it was suggested that Mrs. McBryar move to Georgia to get away from Smith. This suggestion was unacceptable to either Mrs. McBryar or the Tinkers. Mrs. McBryar was told she could have a warrant issued for the arrest of Smith, but she declined, saying she did not want to swear out a warrant.
On Thursday, August 11, 1977, Smith allegedly called appellant at his job in Chattanooga, Tennessee, and told him that he had information that he was involved in burning his house. Appellant told Smith that he did not burn his house and was not concerned with it. He then warned Smith to stop coming to his house and shooting. Smith denied that he had been shooting at or around appellant’s house.
Finally, on Saturday, August 13,1977, the ill feelings between the parties reached a climax. Smith purportedly drove his Nova Chevrolet car to the Sand Mountain Supply near Ider, Alabama, in DeKalb County, Alabama, to buy a window for a building project. The store was closed and he then drove by Shiloh to see if Mary McBryar was still living at appellant’s house. As he passed the residence he saw Mrs. McBryar in the yard near her trailer. According to Smith he was driving at a speed of 35 miles an hour. Appellant contended that Smith shot at Mrs. McBryar. Smith denied the shooting. Mrs. McBryar grabbed a shotgun which she had been shooting that morning with appellant showing her how to eject the spent shells and got into her car to chase Smith. Appellant’s wife told him not to let Mrs. McBryar go alone and appellant got in the car and took the shotgun as they chased the Smith vehicle. It was a pump type shotgun. Mrs. McBryar was driving at a high rate of speed in attempting to overtake Smith’s car.
Approximately a mile from appellant’s residence Smith saw the McBryar car approaching in his rearview mirror. Smith testified the McBryar car rammed his car in the rear. Appellant stated that Smith put his car in reverse and rammed the McBryar car. After the collision and while Smith was trying to get his ear started again, Mrs. McBryar pulled her car alongside Smith’s car and appellant pointed the shotgun at Smith and fired at point-blank range. Smith ducked behind the car door and the shot missed him. Smith raised up and heard a clicking noise as appellant ejected the spent shell. Ducking as appellant fired the second shot, Smith was struck a glancing blow to his head by several pellets. Smith stated, “I went back down behind the door and told him he had shot my brains out.” At this point Smith said Mrs. McBryar opened the driver’s door of his car and had a soft drink bottle in her hand. He stated:
“It was a 16 ounce bottle, and it was full, and I looked at her and I was trying to hear what was going on with the shotgun and she broke the bottle over my head, and then she got out and I was crouched down in the seat looking backwards, and she reached back in and got me by the hair and jerked me, and I came up into *600 the line of fire and he shot me in the back.”
Smith jumped from his car and grabbed the barrel of the shotgun and a struggle ensued between Smith and appellant for possession of the weapon. While the struggle was in progress Mrs. McBryar broke four more 16 ounce bottles on Smith’s head, saying, “Won’t anything kill this s.o.b.” Finally, Smith released the gun because the shotgun blasts had fractured his hip bone and he was in intense pain and had lost a lot of blood. Smith drove to the sheriff’s office in Trenton, Georgia, where he was removed to the hospital.
Appellant raises several issues on this appeal which he contends entitle him to a reversal. He claims the trial court erred in allowing the prosecuting witness to testify that he had information that appellant participated in an arson in Georgia in 1977 and a murder in 1971. He contends that this testimony was introduced as evidence of bad character, which tended to establish in the defendant a criminal propensity. The record reflects that the State’s purpose in adducing this evidence was to establish the relationship of the parties and was not offered to prove the truth of the matter asserted. The State’s theory was that the statements of Smith to appellant were such as to supply appellant with a motive to kill Smith and from this motive the jury could infer the intent to kill when he fired the shotgun at the victim.
In Nickerson v. State, 205 Ala. 684, 88 So. 905, the Supreme Court quoted McAdory v. State, 62 Ala. 154, as follows:
“It is permissible in every criminal case to show that there was an influence, an inducement, operating on the accused, which may have led or tempted him to commit the offense.”
Moreover, Smith’s testimony concerning the telephone conversation with appellant does not violate the hearsay rule because it was material to prove that appellant had a specified motive to commit the act charged. McElroy’s Alabama Evidence, Section 273.-02.
The trial court gave careful instructions to the jury that they were not to consider the evidence as proof of the commission of the arson and murder but merely as proof of the contents of the conversation between Smith and appellant. These instructions rendered harmless any error that might have occurred in the admission of this telephone conversation with appellant. McElroy’s Alabama Evidence, Section 12.01. Appellant reserved no exceptions to the oral charge to the jury.
The evidence is uncontroverted that appellant shot at Smith three times at close range with a pump shotgun and hit him once. There was no believable testimony that the victim was armed at the time of the shooting incident. That appellant was guilty of the offense for which he stands convicted was admitted by appellant during his testimony.
From the record:
“Q. After the cars got stopped, what happened?
“A. He (the victim) fell down in the floorboard, and I shot, and then he raised his head up again, and I shot at him again, and he kept trying to squirm around there, and so I shot him the third time.
“Q. And what shot did you hit him?
“A. The last one I think.”
The circumstances surrounding the shooting precluded any claim of self-defense. Appellant testified he never saw the victim with a pistol, that the victim had not shot at him, but only tried to wrest the shotgun away from appellant after appellant shot him.
During his motion to exclude the State’s evidence for failure to make out a prima facie case of assault with intent to murder, appellant’s counsel admitted the State had proved the offense of assault and battery, “perhaps aggravated assault.”
Error which might be prejudicial in a close case does not require reversal when evidence of guilt is strong. U. S. v. Lipscomb, 435 F.2d 795 (Fifth Circuit 1970). An error as to a ruling on the admission of *601 evidence is rendered harmless to the accused where his own testimony establishes his guilt. Miller v. State, 168 Ala. 100, 53 So. 278.
Appellant claims the trial court committed error in allowing the State to introduce into evidence pages from a transcript of a previous trial where Mrs. McBryar testified inconsistently with her testimony in appellant’s trial. Only two pages of the transcript of the previous trial were allowed into evidence. The court blocked out all testimony except that relating to the inconsistent testimony of Mrs. McBryar. These two pages reflect the following:
“Cross Examination
By Mr. Rayburn:
“Q. You are Mary McBryar?
“A. That’s right.
“Redirect Examination
By Mr. French:
“Q. One other question since he went into it. Who shot George Smith?
“A. I did.”
Thus, it is affirmatively shown that appellant’s own counsel brought out Mrs. McBryar’s inconsistent testimony, and he has no right to now complain about his counsel’s actions. Mrs. McBryar was shown the transcript of her previous testimony where she was asked who shot George Smith and her reply was, “I did,” but she said she did not remember it.
In Lawson v. State, 36 Ala.App. 438, 57 So.2d 643, the court held that the credibility of a witness may be attacked by showing that at a previous time and place he made a statement which was out of accord with testimony given at the instant trial. The court went on to hold:
“It may be noted that, before the prior contradictory character of evidence is admissible, the witness involved must either deny he made the previous statement or testify that he does not remember making it.” (citations omitted)
This is precisely the procedure followed in this ease. See also Johnson v. State, 43 Ala.App. 224, 187 So.2d 281.
We have carefully searched the record for errors injuriously affecting the substantial rights of appellant and have found none. The judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur, except BOOK-OUT, J., who concurs in the result only.