[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 208 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 209 
Mack Lamar Estes was indicted for rape and sexual abuse in the first degree. A jury convicted Estes of sexual abuse in the first degree, a violation of § 13A-6-66, Ala. Code 1975. He was acquitted on the rape charge.
The trial court originally sentenced Estes to 15 years' imprisonment. The trial court split the sentence, and ordered Estes to serve 3 years' imprisonment and 12 years' supervised probation. However, after a hearing on a motion for a new trial, the trial court resentenced Estes to 10 years' imprisonment. The trial court split that sentence, and ordered Estes to serve 3 years' imprisonment.
Estes appeals, arguing that the trial court erred by (1) allowing the State to present evidence of collateral acts, (2) allowing the State to present evidence regarding a charge for possession of marijuana that was pending at the time of trial and evidence of a prior conviction for possession of marijuana, and (3) making comments, which, he argues, invaded the province of the jury, and were therefore inproper.
 Facts
The evidence at trial revealed the following. Mack Estes began dating A.B., and approximately two weeks later, Estes started fondling A.B.'s 11-year-old daughter, M.K.B. M.K.B. testified that the first incident occurred when Estes and M.K.B. were driving home from a gasoline station. Estes was teaching her to drive his pickup truck. He was sitting against the driver's side door and M.K.B. was sitting directly next to him. Although she could not reach the pedals with her feet, she steered the truck while Estes controlled the pedals. As they were driving, Estes placed his right arm around M.K.B.'s shoulder and his left hand on her left thigh. Estes then placed his right hand inside her shirt and fondled her breast while he rubbed her thigh. M.K.B. hit him, said "No," and moved to the passenger side of the truck. (R. 9-11.) Approximately two weeks later, Estes and A.B. got married.
After Estes and A.B. were married, M.K.B. lived with her grandmother for a few months. However, her grandmother married and M.K.B. moved in with her mother and Estes. Estes continued to sexually abuse M.K.B. She testified that Estes would fondle her breasts on the way home from church. Occasionally, Estes would place his hand down the front of M.K.B.'s pants and "start feeling around." Once, Estes inserted his fingers inside her vagina. (R. 39.) M.K.B. further testified that Estes would come in her bedroom at night and watch her sleep. Once, while he was watching her sleep, Estes kissed her on the lips "and put his tongue in [her] mouth." (R. 44, 80-81.) Also, around the house, Estes would wear "short-shorts" that were "baggy." When M.K.B. was the only one in the room, he would let his *Page 210 
penis "hang out." M.K.B. testified that the sexual abuse continued throughout A.B.'s two-year marriage to Estes.
A.B. testified that she and Estes married after dating only one month. Several months later, they began having marital problems. She said that Estes always commented on other women. "He would say things about young girls, and `[that] all of the young girls like me, don't they, Babe?'" (R. 95.) A.B. testified that Estes gave M.K.B. a lot of attention but that he ignored her three sons. In addition, A.B. acknowledged that Estes would often wear baggy shorts. (R. 98.) A.B. said that on more than ten occasions, she woke up in the middle of the night and Estes was not in the bed with her. (R. 99.)
L.L., a friend of M.K.B.'s, testified that one night, Estes took her in his pickup truck to teach her how to drive a stick shift. L.L. was sitting behind the steering wheel while Estes sat against the driver's side door. L.L. was steering the truck and operating the gas pedal and the brake pedal while Estes was operating the clutch and the gear shift. (R. 129-30.) L.L. testified that on this occasion, while they were driving, Estes placed his left hand on her leg. Eventually, Estes put his right arm around her and moved his left hand to the inside of her thigh. L.L. told Estes to stop. However, he moved his right hand onto her left breast and continued rubbing her thigh and breast "more vigorously." Estes asked L.L. "Am I moving them enough? And [L.L.] said, "No, you need to stop." (R. 132.) L.L. moved to the passenger side seat, and Estes took her home.
Among several other defense witnesses, Estes testified on his own behalf. Estes denied that he had sexually abused M.K.B.
 I.
Estes argues that the trial court erred to reversal by allowing the State to present the testimony of L.L., which, he says, was inadmissible evidence of collateral acts. We disagree.
Rule 404(b), Ala.R.Evid., provides:
 "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. . . ."
A trial judge should exclude evidence falling within one of the exceptions only if the probative value is substantially outweighed by the danger of unfair prejudice. See Ex parte Register,680 So.2d 225 (Ala. 1994).
Ordinarily, a prior act of sexual abuse would be inadmissible under Rule 404(b). However, in this case, the alleged prior bad act was offered for the specific purpose of proving motive. (R. 24, 28.)
 "`Motive is defined as "an inducement, or that which leads or tempts the mind to do or commit the crime charged." Spicer v. State, 188 Ala. 9, 11, 65 So. 972, 977 (1914). Motive has been described as "that state of mind which works to `supply the reason that nudges the will and prods the mind to indulge the criminal intent.'" [Charles Gamble, Character Evidence: A Comprehensive Approach 42 (1987).]
 "`Furthermore, testimony offered for the purpose of showing motive is always admissible. McClendon v. State, 243 Ala. 218, 8 So.2d 883 (1942). Accord, Donahoo v. State, 505 So.2d 1067 (Ala.Cr.App. 1986). "`It is permissible in every criminal case to show that there was an influence, an inducement, operating on the accused, which may have led or tempted him to commit the offense.' McAdory v. State, 62 Ala. 154 [(1878)]." Nickerson v. State, 205 Ala. 684, 685, 88 So. 905, 907 (1921).'"
Hatcher v. State, 646 So.2d 676, 679 (Ala. 1994) (emphasis added). *Page 211 
In determining whether evidence concerning a collateral act of sexual abuse is admissible to prove motive, we must consider the following factors: "`(1) the offense(s) charged; (2) the circumstances surrounding the offense(s) charged and the collateral offense(s); (3) the other collateral evidence offered at trial, and (4) the other purpose(s) for which it is offered.'" Campbell v. State, 718 So.2d 123, 130 (Ala.Cr.App. 1997), quoting Bowden v. State, 538 So.2d 1226, 1237 (Ala. 1988).
First, Estes was charged with rape and sexual abuse in the first degree as to M.K.B. Second, the circumstances surrounding the charged offenses and the collateral sexual offense are virtually identical, i.e., both victims are female and in the same age category, and both the charged offense and the collateral offense occurred in Estes's pickup truck in an identical manner. Estes placed his right arm around M.K.B. and L.L. Then, he placed his right hand down their shirts and rubbed their breasts while he rubbed their thighs with his left hand. Third, no other collateral evidence was offered at the trial. Fourth, the State did not offer the collateral offense in order to establish that Estes acted in conformity on this particular occasion. Rather, the State offered the evidence to establish Estes's motive in committing the charged offense.
In this case, the offenses committed by Estes are so similar that a jury could have concluded that Estes is motivated by an unnatural sexual desire for young girls. See Worthy v. State,724 So.2d 55 (Ala.Cr.App. 1998); Hatcher. We find that the probative value of the evidence of the collateral offense outweighed its prejudicial effect. Therefore, we cannot say that the trial court abused its discretion in admitting the collateral evidence. Allen v. State, 624 So.2d 650, 653-54 (Ala.Cr.App. 1993); see also Worthy v. State, 724 So.2d 55 (Ala.Cr.App. 1998) (holding that collateral sexual offense was similar to the present offense, and therefore, that evidence of that collateral offense was relevant to show motive); Campbell v. State, 718 So.2d 123 (Ala.Cr.App. 1997); Ex parte Register, 680 So.2d 225 (Ala. 1994) (holding that collateral evidence was admissible because the evidence tended to show that the appellant had a propensity for unusual sexual relations); Hatcher.
 II. A.
Estes argues that the trial court erred in admitting evidence of a charge pending against him for possession of marijuana. On cross-examination of Estes, the following occurred:
 "Q. [State]: You have been presently charged with possession of marijuana based on that search warrant; is that correct?
 "A. The law enforcement people came over with a search warrant.
"Q. My question is very simple.
"A. Yes, sir, it is.
"Q. You're presently charged with that?
"A. Yes, sir, I am.
"MR. YOUNG [Defense attorney]: Objection, Your Honor. *Page 212 
"THE COURT: Overrule the objection.
 "Q. [State]: Now, are you the same Mack Estes that on November 30, 1983, was convicted of violation of the Alabama Uniform Controlled Substance Act?
"MR. YOUNG: Objection, Your Honor.
"Q. [State]: Specifically, possession of marijuana?
"MR. YOUNG: Objection, Your Honor.
". . . .
"TRIAL COURT: Overrule the objection."
(R. 269.)
Although Estes's trial attorney objected to this line of questioning, a general objection to the admission of evidence does not preserve an issue for appellate review unless the evidence is manifestly illegal or the ground for the objection is obvious. Ward v. State, 376 So.2d 1112 (Ala.Cr.App.), cert. denied,376 So.2d 1117 (Ala. 1979). Here, the grounds for the objection were not obvious, and the evidence was not manifestly illegal. See Id.
Even if the issue had been preserved for our review, we would conclude that the trial court did not error by allowing the State to present evidence regarding the pending charge of possession of marijuana. On cross-examination of A.B., Estes's attorney initiated questioning concerning the circumstances surrounding the pending charge. Then, on cross-examination of Estes, when the State began questioning Estes about the pending possession-of-marijuana charge, Estes's defense attorney objected. Estes complains on appeal that the trial court improperly permitted the State to introduce evidence of the pending charge; however, the jury already knew about the charge from his cross-examination of A.B.
 "`A party cannot assume inconsistent positions at trial and on appeal, and a party cannot allege as error proceedings in the trial court that were invited by him or were a natural consequence of his own action. Leverett v. State, 462 So.2d 972
(Ala.Cr.App. 1984), cert. denied, 462 So.2d 972
(Ala. 1985). A defendant cannot invite error by his conduct and later profit by the error. Timmons v. State, 487 So.2d 975 (Ala.Cr.App.), cert. denied, 487 So.2d 975 (Ala. 1986).'"
Pressley v. State, 770 So.2d 115 (Ala.Cr.App. 1999), quoting Fountain v. State, 586 So.2d 277, 282 (Ala.Cr.App. 1991); see also Smith v. State, 745 So.2d 922 (Ala.Cr.App. 1999).
 B.
He further argues that the trial court erred by allowing the State to present evidence concerning Estes's prior conviction for possession of marijuana because, he says, the offense is not one involving moral turpitude. This issue was not preserved for our review. Again, Estes made only a general objection. After reviewing the record, we cannot say that the grounds for the objection are obvious. See Ward v. State, 376 So.2d 1112
(Ala.Cr.App.), cert. denied, 376 So.2d 1117 (Ala. 1979). Even if the issue had been preserved for our review, however, Estes's argument is without merit. There is no requirement under Rule 609 that the offense involve moral turpitude in order for a previous conviction to be admitted as impeachment evidence against a defendant. See Rule 609, Ala.R.Evid.
 III.
Estes next argues that the trial court invaded the province of the jury by making several comments throughout the trial regarding the nature of the sexual offenses.
 A.
On cross-examination of the victim, defense counsel asked her the following question:
 "Q. Do you remember ever an occasion right before the separation or right before that period of time when your mom and Mack separated, when you came in and complained to Mack about some boys on the school bus talking about you?
"A. Yeah.
"Q. Talking about some intimate things, weren't they?
"A. Yes.
 "Q. Yet you went and told Mack about it, the very man that you're accusing." *Page 213 
Then, later, during the cross-examination of the social worker who had interviewed the victim, the defense counsel asked, "Did she ever tell you that upon her being accused of having a bad smell, that she, on one occasion —" upon which the prosecutor objected that defense counsel was asking a question not based on the evidence. The trial judge initially sustained the objection, stating before the jury that he did not recall any evidence in the trial concerning the victim's body odor. When defense counsel persisted, the judge excused the jury and had the court reporter find the above-quoted testimony.
From the extended conversation that took place among the lawyers and the judge, it becomes evidence that the teasing on the school bus amounted to the boys telling the victim that she smelled like she had been having sex. The trial judge refused to allow that evidence before the jury because, he said, it allowed defense counsel to imply that the underaged victim may have been sexually active with someone before the alleged rape and he believed the rape-shield rule prohibited such testimony. So, he brought the jury back in and instructed it as follows:
 "Ladies and gentlemen, earlier in the course of ruling on an objection, a part of the objection raised the question of whether a particular fact had been put into evidence or not. And it's very unusual for the Court to suggest that a fact was not put into evidence, but in order to rule on the objection, I did so. At this point in time, I'm going to have the court reporter read back to you the pertinent portion of the transcript that dealt with the series of questions which gave rise to this particular problem. And you are to be the judge for yourself about the testimony and the implications of the testimony that were earlier given. The court reporter will now read to you."
(Court reporter reads testimony set out above).
 "Ladies and gentlemen, only the answers from the witness are evidence in the case. Statements made by the attorney are not evidence in this case. There is no evidence in this case of body odor, and there won't be any evidence in this case about body odor on the school bus. That would be totally irrelevant and immaterial to any fact that you're called on to decide, and I ask you to put that inappropriate suggestion out of your minds. You may proceed."
(R. 176.)
Defense counsel never objected to any of the instructions or comments made by the judge to the jury. Defense counsel then proceeded with his original questioning, which was whether it would be consistent for somebody who had been sexually abused or raped to continue to have a relationship with her assailant.
On appeal, Estes argues that he was prejudiced when the trial judge commented that he did not remember any evidence being presented regarding M.K.B.'s body odor. Estes also contends that the trial court invaded the province of the jury when it instructed the court reporter to read to the jury testimony from earlier in the trial. The issue whether the trial court invaded the province of the jury is raised for the first time on appeal; therefore, it was not properly preserved for appellate review. See Biddie v. State, 516 So.2d 846 (Ala. 1987); Maul v. State,531 So.2d 35 (Ala.Cr.App. 1987). It was never the defense's desire to delve into the victim's body odor, or anything of a sexually intimate nature. The point of the defense at trial was to raise doubt about the victim's truthfulness by introducing evidence indicating that she came to the appellant with an intimate personal problem at the same time she claims he was sexually assaulting her. Defense counsel merely knew more details than he remembered asking the victim about and inadvertently used the phrase "bad smell" rather than repeating the words "intimate thing." Appellate *Page 214 
counsel's issue has nothing to do with what the argument was about at trial.
Even if the issue had been preserved for our review, however, we would find no error on behalf of the trial court. "Although a judge may instruct a jury `that there is or is not evidence of particular facts when such is the case,' Seibold v. State,287 Ala. 549, 562, 253 So.2d 302 (1970), a judge should not comment on the weight of the evidence or draw conclusions from disputed facts." Jones v. State, 488 So.2d 48, 49 (Ala.Cr.App. 1986). Here, the trial court did not comment on the weight of the evidence. Rather, the court merely stated that a particular fact was not in evidence and instructed the court reporter to read back testimony in order to show the jury that M.K.B. did not say anything about body odor in her testimony as the defense attorney had suggested. We find that the trial court did not improperly comment on the evidence. See Gibson v. State, 555 So.2d 784
(Ala.Cr.App. 1989).
 B.
Estes also argues that the trial court erred by commenting on the evidence while giving an instruction to the jury. Estes complains about the following instruction:
 "Now, let me be very careful in saying what I need to say to you now. A person can be convicted under the law based on — of an offense of these types based on the testimony of the victim. The law does not require any other testimony if you believe the testimony and believe that testimony strongly enough so that you do not have a reasonable doubt. If that were not the case, usually these types of crimes would not be committed out in the open where they are visible. And therefore, the law does not require corroboration as such. But in saying this, I'm merely stating for you the bare bones legal requirement. I've already told you there must be proof beyond a reasonable doubt, and it is up to you to decide whether there is sufficient evidence before you to conclude that the offenses were committed."
(R. 304-05.) Estes contends that the trial judge invaded the province of the jury when he said that sexually related crimes usually are not committed out in the open. The defense attorney objected to this charge and asked the trial court if it was going to give an additional charge. At defense counsel's request, the trial court gave the following clarifying instruction:
 "Ladies and gentlemen, after conferring with the attorneys, there are two or three additional points that I need to clarify. Earlier in the charge, I stated that crimes of this nature do not happen out in the open. Of course, you understand that I am not commenting on the facts of this case. I'm not suggesting that — what the conclusion is or that anything happened in this case. That is strictly for your decision. I'm simply saying, perhaps echoing the comment that I heard both lawyers say, that no one knows what goes on behind closed doors. And there are crimes that are committed, if at all, usually behind closed doors. And the law does not impose requirements on — of proof that would somehow cause the police force to have to pry into bedrooms further than they already do. . . . I'm not telling you that anything happened in this case. If you understand it that way, you understood it incorrectly. I was just simply saying that if you find the victim's testimony sufficient, standing alone, to convict, you could do that. But it is your responsibility to weigh that in context with all of the testimony and to decide what the true facts are in the case . . . ."
(R. 309-10.) After the trial court gave this clarifying instruction, the defense attorney stated that he was satisfied. (R. 311.) This issue was not preserved for appellate review because there is no adverse ruling on the record. See Gayle v. State, 616 So.2d 378 (Ala.Cr.App. 1993); see also James v. State,516 So.2d 856 (Ala.Cr.App. 1987). *Page 215 
Even if the issue had been preserved, however, we would conclude that the trial judge did not err because he was not commenting on the evidence. Rather, the trial court was explaining to the jury why corroboration is not required in sexually related cases. See Gibson v. State, 555 So.2d 784
(Ala.Cr.App. 1989). Moreover, in the clarifying instruction, the trial court explicitly explained that it was not commenting on the evidence and that the jury was to weigh the evidence and decide the facts of the case. (R. 309-10.) Therefore, the trial court did not err in its instruction to the jury.
 IV.
Originally, the trial court sentenced Estes to 15 years' imprisonment. The trial court split the sentence and ordered Estes to serve 3 years' imprisonment and 12 years' supervised probation. Then, on March 31, 1999, the trial court held a hearing on a motion for a new trial. We cannot discern from the record who filed the motion because it is not contained in the record on appeal or reflected as an entry in the case action summary sheet. However, the record on appeal does contain the transcript from the hearing. At the hearing, Estes's attorney[1] argued:
 "Your Honor, I admit to being confused a good part of the time, but I have not alleged anything about a 10-year remoteness problem. What I have alleged is that my client in 1983 was convicted under the Controlled Substances Act which has been repealed, that it had its own enhancement provisions. That the recidivist provisions in that statute took care of those particular types of crimes."
(R. 347.) Therefore, she argued that the 1983 conviction had improperly been used to enhance Estes's sentence under the Habitual Felony Offender Act because, she argued, the 1983 conviction occurred before the amendment of the Controlled Substances Act, which had its own enhancement provision. In support of her position, Estes's counsel cited Ex parte Brannon,547 So.2d 68 (Ala. 1989), and Ex parte Chambers, 522 So.2d 313
(Ala. 1987). Accordingly, the trial court, after a cursory review, relied on counsel's argument, and reduced Estes's sentence to 10 years' imprisonment. The trial court split the sentence and ordered Estes to serve 3 years' imprisonment.
On appeal, the State argues that the trial court erroneously set aside Estes's original sentence. The State has asked this court to remand the case to the trial court so that that court can reinstate the original sentence. This court has the authority to address the State's question regarding the validity of Estes's resentencing even though it is being raised for the first time on appeal. "`The issue of an illegal or improper sentence may be raised [on direct appeal] even where no objection was raised at sentencing. Ex parte Brannon, 547 So.2d 68 (Ala. 1989).'" Johnson v. State, 716 So.2d 745, 750 (Ala.Cr.App. 1997), quoting Salter v. State, 606 So.2d 209, 212 (Ala.Cr.App. 1992); see also Hunt v. State, 659 So.2d 998 (Ala.Cr.App. 1994) ("Matters concerning unauthorized sentences are jurisdictional and, therefore, can be reviewed even if they have not been preserved."). Moreover, sentencing under the Habitual Felony Offender Act is mandatory, not discretionary. See Gholston v. State, 620 So.2d 719 (Ala. 1993); Bogan v. State, 607 So.2d 322
(Ala.Cr.App. 1992). Therefore, if the trial court improperly sentences a defendant under the Habitual Felony Offender Act, the sentence is void and can be reviewed by this court.
Estes's counsel erroneously argued at the hearing on the motion for a new trial that Estes's 1983 drug conviction should not be used to enhance his sentence under the Habitual Felony Offender Act. In 1987, the Drug Crimes Amendments Acts of 1987 amended the Controlled Substances Act, which provided its own sentencing enhancement for drug offenses. The Drug *Page 216 
Crimes Act "repealed § 20-2-70, the recidivist provision within the Controlled Substances Act, for conduct occurring after its effective date, and made drug-related crimes subject to the Habitual Felony Offender Act," rather than the enhancement provisions provided by the Controlled Substance Act. Burton v. State, 728 So.2d 1142, 1148 (Ala.Cr.App. 1997); see also §§ 13A-12-210 through -216. In the present case, the conduct that gave rise to Estes's conviction for sexual abuse in the first degree occurred on December 2, 1998, well after the effective date of the Drug Crimes Amendments Act of 1987. Therefore, we find that the trial court erred by failing to consider Estes's 1983 drug conviction for enhancement purposes under the Habitual Felony Offender Act when it resentenced Estes.
Based on the foregoing, this case is remanded to the trial court with directions to reinstate the original sentence. Return is to be made to this Court within 30 days of this opinion.
REMANDED WITH DIRECTIONS.*
Long, P.J., and McMillan, and Fry, JJ., concur. Baschab, J., concurs in result only.
* Note from the reporter of decisions: On February 18, 2000, on return to remand, the Court of Criminal Appeals affirmed, without opinion. On March 17, 2000, that Court denied rehearing, without opinion. On June 30, 2000, the Supreme Court denied certiorari review, without opinion (1991261).
[1] After Estes's trial, he retained new counsel to represent him on appeal. His appellate counsel represented him at the hearing on the motion for a new trial.