[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 73 
The appellant, Mark Edgar Ritchie, was convicted of two counts of first-degree sexual abuse, violations of § 13A-6-66(a)(1), Ala. Code 1975. The trial court sentenced him, as a habitual offender, to serve consecutive terms of fifteen years in prison in case number CC-98-387 and eighteen years in prison in case number CC-98-388. See § 13A-5-9(c)(1), Ala. Code 1975. The appellant did not file any post-trial motions. This appeal followed.
In December 1997, J.S.S., who was nine years old, Z.A.S., who was eight years old, and their mother lived in the same trailer park as the appellant. One day in December 1997, J.S.S. and Z.A.S. were at the appellant's trailer playing with the appellant's sons. While J.S.S. was in the children's bedroom playing a video game, the appellant called him into the living room. The appellant, who was sitting in a recliner and wearing only gray underwear, asked J.S.S. to sit in his lap. After J.S.S. got into his lap, the appellant unzipped J.S.S.'s pants, put his hand inside of J.S.S.'s pants and underwear, and rubbed J.S.S.'s penis. J.S.S. testified that his brother, Z.A.S., and some of the appellant's sons were in the living room watching television at the time. Subsequently, the appellant asked J.S.S. to go into his bedroom and bathroom, and he got a magazine that contained photographs of naked people from underneath the bed and showed it to J.S.S. J.S.S. testified that the appellant took off his own underwear, got a jar of petroleum jelly, and put the petroleum jelly on "himself." (R. 77.) J.S.S. added that, at some point, the appellant told him to close his eyes and hold out his hand, but he refused. The appellant asked J.S.S. to keep the incident a secret. J.S.S. said, "[O]kay," and left the bathroom. (R. 63.)
Z.A.S. testified that he was sitting on the living room floor watching television when the appellant, who was sitting in a chair and wearing only gray underwear, asked him to sit in his lap. Z.A.S. testified that, after he got into his lap, the appellant put his hand down his pants and touched his penis. At some point, the appellant and Z.A.S. went into the bathroom. While they were in the bathroom, the appellant got out a jar of petroleum jelly, opened the lid, and opened his underwear. At that point, Z.A.S. looked away. However, Z.A.S. testified that he remembered seeing the appellant rubbing his own penis. Z.A.S. also testified that there was a magazine that contained photographs of naked people in the bathroom. He further stated that the appellant had the magazine out and wanted him to look at it. Z.A.S. subsequently left the bathroom.
 I.
The appellant argues that the trial court improperly admitted testimony about his *Page 74 
prior acts of sexual abuse against K.D.J. and L.B.W.
 A.
Initially, the appellant argues that the testimony about the prior acts was not admissible because the facts and circumstances surrounding the charged offenses and the prior acts allegedly were not similar.
 "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial."
Rule 404(b), Ala. R. Evid.
 "A trial judge should exclude evidence falling within one of the exceptions only if the probative value is substantially outweighed by the danger of unfair prejudice. See Ex parte Register, 680 So.2d 225 (Ala. 1994).
 "Ordinarily, a prior act of sexual abuse would be inadmissible under Rule 404(b). However, in this case, the alleged prior bad act was offered for the specific purpose of proving motive. (R. 24, 28.)
 "`"Motive is defined as `an inducement, or that which leads or tempts the mind to do or commit the crime charged.' Spicer v. State, 188 Ala. 9, 11, 65 So. 972, 977 (1914). Motive has been described as `that state of mind which works to "supply the reason that nudges the will and prods the mind to indulge the criminal intent."' [Charles Gamble, Character Evidence: A Comprehensive Approach 42 (1987).]
 "`"Furthermore, testimony offered for the purpose of showing motive is always admissible. McClendon v. State, 243 Ala. 218, 8 So.2d 883 (1942). Accord, Donahoo v. State, 505 So.2d 1067 (Ala.Cr.App. 1986). `"It is permissible in every criminal case to show that there was an influence, an inducement, operating on the accused, which may have led or tempted him to commit the offense." McAdory v. State, 62 Ala. 154 [(1878)].' Nickerson v. State, 205 Ala. 684, 685, 88 So. 905, 907 (1921)."'
 "Hatcher v. State, 646 So.2d 676, 679 (Ala. 1994) (emphasis added).
 "In determining whether evidence concerning a collateral act of sexual abuse is admissible to prove motive, we must consider the following factors: `"(1) the offense(s) charged; (2) the circumstances surrounding the offense(s) charged and the collateral offense(s); (3) the other collateral evidence offered at trial, and (4) the other purpose(s) for which it is offered."' Campbell v. State, 718 So.2d 123, 130 (Ala.Cr.App. 1997), quoting Bowden v. State, 538 So.2d 1226, 1237 (Ala. 1988)."
Estes v. State, 776 So.2d 206, 210-11 (Ala.Crim.App. 1999).
K.D.J. testified that, in 1994, she was eight years old and went to the same church as the appellant. One day in 1994, her mother and stepfather, who were friends with the appellant, invited him to their home. On that day, the appellant, K.D.J., her mother, her stepfather, and her sister were sitting in the living room. The appellant was sitting beside K.D.J. on *Page 75 
the love seat. While K.D.J.'s mother, stepfather, and sister were watching television, the appellant put his arm around K.D.J., rubbed his hand between her legs, and touched her "private" on the outside of her clothing. (R. 210.) Later, when K.D.J. was showing the appellant around the house, the appellant "French kissed" her while they were in her stepfather's bedroom. (R. 211.) She also testified that, while she and the appellant were standing in the hallway and her stepfather was in the bathroom, the appellant "French kissed" her and put his hand underneath her shirt. (R. 215.)
L.B.W. testified that she was about ten years old in March 1996. At that time, she lived in the same trailer park as the appellant and played with the appellant's sons. One day in March 1996, she was playing with the appellant's sons at the appellant's trailer. The appellant was inside, and she and the boys were outside jumping on the trampoline. L.B.W. testified that she gave one of the boys a "wedgie," and he went inside and told his father. (R. 219.) The appellant called L.B.W. inside the trailer and sent the boys back outside. L.B.W. went into the living room of the trailer, and the appellant picked her up, put her in his lap, and started rubbing her legs and underneath her shirt. L.B.W., who testified that she believed they were sitting on a chair, tried to get up, but could not. Subsequently, the appellant carried L.B.W. to his bedroom and put her on the bed. L.B.W. tried to get up, but the appellant was kissing her neck and she could not get up. L.B.W. could not remember what, if anything, else happened.
Although the victims in the present case were males and the victims of the prior acts were females, the acts of abuse shared many similarities. All of the victims were between eight and ten years of age. Furthermore, all of the victims testified that they were in a living room when the appellant touched them. K.D.J., J.S.S., and Z.A.S. testified that the appellant touched their genital areas, and K.D.J. and J.S.S. testified that there were other people in the same room watching television when the appellant touched them. Additionally, at the time of the offense, L.B.W., like J.S.S. and Z.A.S., lived in the same trailer park as the appellant and was at the appellant's trailer playing with his sons when the abuse occurred. Finally, L.B.W., J.S.S., and Z.A.S. all testified that they were sitting in the appellant's lap at the time the appellant touched them. Even though the prior acts of abuse were not identical to the acts of abuse in the present case, they were sufficiently similar to show that the appellant's motive for sexually abusing J.S.S. and Z.A.S. was his unnatural desire for young children. See Ex parte Register,680 So.2d 225 (Ala. 1994); Estes, supra; Atkisson v. State, 640 So.2d 33
(Ala.Crim.App. 1993). Therefore, the appellant's argument is without merit.
 B.
Next, the appellant argues that the testimony about the prior acts of abuse was not reliable. He contends that K.D.J.'s testimony was not reliable because the pastor of the church he and K.D.J. attended impeached her testimony that she did not have a crush on the appellant. The pastor also testified that K.D.J. sometimes sat next to the appellant on the piano bench at church, got into the appellant's lap, and, on one occasion, jumped on the appellant and wrapped her legs around his waist. He also contends that L.B.W.'s testimony was not reliable because he had been acquitted of the charges of sexually abusing her. However, these facts went to the weight and credibility the jury would assign to K.D.J.'s and L.D.W.'s testimony rather than its admissibility. SeePettiway v. *Page 76 State, 539 So.2d 368 (Ala.Crim.App.), rev'd on other grounds, 539 So.2d 372 (Ala. 1988). Therefore, the appellant's argument is without merit.
 C.
Finally, the appellant argues that the testimony about the prior acts of abuse seriously prejudiced him. Under Rule 403, Ala. R. Evid., relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." (Emphasis added.) The probative value of K.D.J.'s and L.B.W.'s testimony was extremely high. Furthermore, during its oral charge, the trial court instructed the jury as follows:
 "The Court charges the ladies and gentlemen of the jury that two young ladies testified about alleged prior acts by the [appellant] toward them. You may not consider this testimony as evidence that the [appellant] has a bad character or that he acted in conformity with that character on the occasion which is made the basis of the present charges. You may only consider that testimony as evidence that the [appellant] may have a motive to commit the acts complained of in the present incident."
(R. 319-20.) Therefore, the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice.
For these reasons, the trial court properly admitted testimony about the appellant's prior acts of abuse against K.D.J. and L.B.W.
 II.
The appellant also argues that the trial court improperly allowed the State to ask, on cross-examination, whether he had ever owned pornographic magazines. Specifically, he contends that such evidence was irrelevant and constituted improper character evidence. J.S.S. and Z.A.S. both testified that the appellant showed them a magazine that contained photographs of naked people. After J.S.S. and Z.A.S. told their mother about the abuse, she went to the appellant's trailer and confronted him. Subsequently, law enforcement officers searched the appellant's trailer, but they did not find any pornographic magazines. On direct examination, the appellant testified that he did not have a pornographic magazine in his trailer. On cross-examination, the following occurred:
 "[PROSECUTOR]: Now, from the time [the victims' mother] came down there, you had time to hide anything that you thought might be incriminating?
"[THE APPELLANT]: Time between that and when?
"[PROSECUTOR]: When the search warrant was executed.
"[THE APPELLANT]: Yes, sir, I would have had time.
"[PROSECUTOR]: You never had a naked magazine?
 "[DEFENSE COUNSEL]: Objection, Judge. Ever had a naked magazine. Ever. That's not relevant to this.
 "THE COURT: This is cross-examination, too. I'll overrule you.
 "[DEFENSE COUNSEL]: Judge, it would reflect bad character if we said ever, going back —
 "THE COURT: [Defense counsel], I overrule you. This is cross-examination.
 "[PROSECUTOR]: Mr. Ritchie, ever had a magazine like the boys described?
 "[THE APPELLANT]: In my adult life, yes, sir; in my married life, no."
(R. 299-300.) The prosecutor's questions were relevant to the allegations in this *Page 77 
case. Both victims testified that the appellant had shown them a magazine that contained photographs of naked people. Additionally, the appellant admitted that he had had time to hide incriminating evidence before law enforcement officers executed the search warrant. Furthermore, whether the appellant had previously owned such magazines did not constitute inadmissible character evidence pursuant to Rule 404, Ala. R. Evid. Therefore, the appellant's argument is without merit.
The appellant also argues that the prosecutor's question was unduly prejudicial pursuant to Rule 403, Ala. R. Evid. However, he did not present this specific argument to the trial court. "`The statement of specific grounds of objection waives all grounds not specified, and the trial court will not be put in error on grounds not assigned at trial.'Ex parte Frith, 526 So.2d 880, 882 (Ala. 1987)." Miller v. State,602 So.2d 488, 496 (Ala.Crim.App. 1992). Therefore, this argument is not properly before this court.
For the above-stated reasons, we affirm the trial court's judgment.
AFFIRMED.
McMillan, P.J., and Cobb, Shaw, and Wise, JJ., concur.